762 P.2d 579

**Gene L. ALLEN, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Department of Corrections, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 3582.**

Court of Appeals of Arizona, Division 1, Department D.

April 12, 1988.

Review Denied Nov. 8, 1988.*

---

* Holohan, J., of the Supreme Court, voted to grant.

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for petitioner Employee.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by John B. Chickering, Charles G. Rehling, Tucson, for respondents Employer and Carrier.

## OPINION

EUBANK, Judge.

This is a special action review of an Industrial Commission award for a noncompensable claim. Two issues are presented on review:

(1) Whether the "bunkhouse rule" is applicable.

(2) Whether the "on premises" exception to the "going and coming rule" is applicable.

On March 12, 1985, the petitioner employee (claimant) sustained a back injury while employed by the respondent employer, Department of Corrections (DOC). The respondent carrier, State Compensation Fund (Fund), issued a notice of claim status on May 8, 1985, denying compensability. The claimant timely requested a hearing and two hearings were held. The award denied claimant compensation.

The facts are as follows. The claimant was employed at the Fort Grant minimum security prison as a Correctional Food Service Supervisor I. He was hired by DOC in September 1984 while he was living in Thatcher, Arizona, 45 miles from Fort Grant. The claimant resided in his own trailer, renting a trailer space for $80 a month. DOC operated buses between Thatcher and Fort Grant for its employees.

When the claimant worked the 6:00 a.m. to 2:00 p.m. shift, he could ride the bus, but if he worked the 4:00 a.m. to noon shift, he had to drive his own vehicle, which cost approximately $10 per day.

In October 1984, the claimant applied to Fort Grant's housing committee for housing on the prison premises and was selected for a staff mobile home space. He moved his own trailer onto the space. He paid no rent or utilities for the space and it was his understanding he would be "on call" for all emergency situations such as escapes and blackouts, even during his off-duty hours. His mobile home space was located approximately one and one-half blocks from the prison kitchen where he worked.

The claimant testified that his back injury occurred on March 12, 1985, as he left his trailer to walk to work at 6:00 a.m. It had rained during the night, and he slipped and fell while descending his trailer's wet metal steps. The claimant injured his tailbone and cut and bruised his right upper thigh. After reporting to work, he drove himself to Safford, saw a doctor, and received medical treatment.

When the claimant moved onto Fort Grant, the rules and regulations [1] pertaining to his application for staff housing provided in pertinent part:

4.0 *GENERAL:* Because of the remote geographical location, it is in the best interest of the institution and the Department of Corrections to offer housing to staff members within the limits of this facility. This provides a means for quick response of staff members to any administrative, medical, maintenance, or security/custody emergency situation(s) occurring within an 800–bed adult facility, and enhances the continuous and orderly operation of the institution.

\* \* \* \* \* \*

6.0 PROCEDURE:

\* \* \* \* \* \*

---

1. There appears to be some question in the record as to whether these rules had been reduced to writing at the time of the claimant's application. He testified that he received a copy. The assistant deputy warden testified that, although not yet written, these rules applied to claimant's application.

6.2 *Eligibility Criteria*—In order to simplify the assignment process, staff members requesting housing will fall into one of the below listed priority categories. Applications for housing will be considered in the following categories:

\* \* \* \* \* \*

6.2.3 *Non–Essential DC Staff* —Priority will be given to those staff members who agree to make themselves available in times of ADC/FGTC needs to maintain or restore the safe and orderly operation of the facility or provide other support services. These will include remaining permanent status ADC staff members who have not been identified in Eligibility Criteria Numbers 6.2.1 and 6.2.2.

The claimant's immediate supervisor testified that any Fort Grant employee living on or off of the prison premises was subject to being "called out" in the event of an emergency. He acknowledged that the claimant often responded to these emergency call-outs, even during his off-duty hours. He also testified that employees who lived on Fort Grant but refused to participate in emergency call-outs would probably be asked to move off of the premises. According to him, the warden made the final decisions regarding who lived on Fort Grant, although he usually followed the housing committee's recommendations.

The former Food Service Director at Fort Grant testified that he was on the housing committee when the claimant was approved for staff housing. He explained that staff housing was provided because the nearest community was 40 miles away and the facility needed to have staff immediately available for emergencies. He stated that all staff members were eligible to apply for staff housing and that the most important factor in making selections was the benefit a particular individual would provide the institution.

The former director also testified that the kitchen was critically understaffed when the claimant applied for housing, with many of the kitchen staff consistently working overtime. The claimant was selected because of this problem and his previously-demonstrated willingness to help with escapes, blackouts, and other emergencies. He denied that it was necessary or required for the claimant to live on Fort Grant. It was merely a convenience to the employer and in the nature of a benefit or privilege to the claimant.

The assistant deputy warden at Fort Grant, who also was on the housing committee when the claimant applied, testified that the claimant was selected from a waiting list of approximately 20–25 people. He stated that the claimant was paid between $15,000 and $16,000 a year and financial need was not stated as a basis for his application. The claimant was selected for staff housing because he was deemed to be the most valuable employee in the waiting group. He also stated that *only* the warden was required to live on Fort Grant. It was not required or necessary for the claimant to live on Fort Grant and he could have performed all of his duties living either on or off of the prison premises.

Reasonable alternative housing was available to Fort Grant employees in neighboring communities and only about 25 percent of the prison's employees lived on the premises. The deputy warden testified that the claimant had his own trailer and Fort Grant provided him a mobile home space and utilities free. Fort Grant had no control over the physical premises themselves. There was no additional compensation provided to employees that lived on Fort Grant. Finally, he testified that it was useful and beneficial to have the claimant immediately available on the premises for escapes and power outages but he was not necessary to Fort Grant.

 The claimant first argues that the bunkhouse rule applies to make his injury compensable. To be compensable, an employee's injury by accident must arise out of and in the course of his employment. *See* A.R.S. § 23–1021(A). In general, an injury occurring while going to or coming from work does not arise in the course of employment (the going and coming rule). *E.g., Ebasco Services, Inc. v. Bajbek,* 79 Ariz. 89, 284 P.2d 459 (1955). A major

exception to this rule applies if the injury occurs on the employer's premises (on premises exception). *E.g., Pauley v. Industrial Comm'n,* 109 Ariz. 298, 508 P.2d 1160 (1973). The bunkhouse rule is merely an extension of the on premises exception. *Gaona v. Industrial Comm'n,* 128 Ariz. 445, 626 P.2d 609 (1981). In order to apply the bunkhouse rule, the employee must be *required* to live on the employer's premises either expressly or by reason of the particular circumstances. *Hunley v. Industrial Comm'n,* 113 Ariz. 187, 549 P.2d 159 (1976); 1A A. Larson, *Workmen's Compensation Law* § 24.40 at 5–244 to 5–251 (1985). Our supreme court defined the bunkhouse rule in *Hunley* as follows:

> The bunkhouse rule is an extension of the general rule that where an employee is injured on the employer's premises he is entitled to compensation for the injuries if they were received during a reasonable and anticipative use of the premises. *Argonaut Insurance Co. v. Workmen's Compensation Appeals Board,* 55 Cal.Rptr. 810, 247 Cal.App.2d 669 (1967). Where an employee is *required* to live on the employer's premises, an injury suffered by the employee while making a reasonable use of the employer's premises is incurred in the course of employment although the injury is received during the employee's leisure time. *Johnson v. Arizona Highway Department,* 78 Ariz. 415, 281 P.2d 123 (1955). (Emphasis added).

113 Ariz. at 188, 549 P.2d at 160.

The administrative law judge relied on the word "required" in denying claimant compensation. Finding 7 of the award states:

> 7. By contrast [to *Hunley*], in the instant case, the applicant was neither *required* by the employer nor *required* by circumstances to live on the employer's premises. Counsel for the applicant argues that once the applicant was selected by the housing committee to live on base, the contract of employment was modified by additional rules and regulations which the applicant was expected to comply with as a condition of his continued residence on the base. The applicant

suggests the employer modified the employment status of these individuals to encourage them to reside on the premises and that decisions to encourage staff to live on the facility or make housing available to them was solely to benefit the institution. The undersigned is not convinced that such modifications of the employment contract constituted an express or implied requirement by the employer that the applicant reside on the premises. *Since the applicant was not required to live in the employer's premises, the "bunkhouse" rule does not apply.* Therefore, the applicant has not sustained a compensable injury arising out of and in the course of his employment with the defendant employer. (Emphasis added).

We disagree. In *Hunley,* our supreme court adopted a very broad definition of "required" by reviewing the surrounding circumstances as they related to the claimant. The court said:

> It is true that petitioner was not absolutely required to live in her employer's apartment, but as Larson says:

> "Logically, however, even in the absence of a requirement in the employment contract, residence should be deemed 'required' whenever there is no reasonable alternative, in view of * * * the lack of availability of accommodations elsewhere." 1 Larson, Workmen's Compensation Law, § 24.40, at 5–169 to 5–170. [now 1A A. Larson, *Workmen's Compensation Law* § 24.40 at 5–248 (1985)].

> The evidence shows that the only alternative to petitioner living on her employer's premises was to purchase a mobile home in the nature of a trailer which could be parked at spaces provided by the park service in the Grand Canyon. For petitioner, because of her financial condition, there was a lack of availability of accommodations and lacking a reasonable alternative as a practical matter, living in her employer's apartment was compelled. [Citations omitted]. (Emphasis added).

*Id.* at 188, 549 P.2d at 160. Thus, viewed from the claimant's circumstances in *Hunley*, she was not "required" to live in her employer's apartment by her employer but by her economic situation, including her need for employment. The employer did not "require" her to live in the apartment but her circumstances did.

*Hunley's* quotation from *Larson, supra*, indicates still another dimension of the word "required." It states "even in the absence of a requirement in the employment contract" as a qualification. 1A A. Larson, *Workmen's Compensation Law* § 24.40. This was also the partial concern of our supreme court in *Johnson v. Arizona Highway Dept.*, 78 Ariz. 415, 417, 281 P.2d 123, 124 (1955). The *Johnson* court said:

> Mr. Earl Standage, supervisor of the Motor Carrier Department, who had supervision over all inspection stations, testified that the employees were not required to avail themselves of these living quarters. In the sense that the employer did not expressly compel the use of these facilities by the employees, this statement is no doubt correct. Our view is that an *employee may be compelled to accept housing facilities merely by reason of the conditions and circumstances under which he is required to work as well as by reason of the express requirement provided in an employment contract.* There is authority susceptible of the interpretation that if there is only consent by the employer that the employee could use housing facilities furnished by the employer, irrespective of any requirement, either express or by reason of circumstances, an accident occurring during occupancy is compensable. *Wilson Cypress Co. v. Miller*, 157 Fla. 459, 26 So.2d 441. Our view is [that] this is extending the rule of compensability too far. At least the element of reasonable requirement should exist. (Emphasis added).

*Johnson* held that because the claimant was employed as an inspector at a state inspection station located at Lupton, a remote area of northeastern Arizona which offered no affordable housing, and because he was without transportation, he was employed under conditions that offered no other reasonable alternatives to housing other than to utilize the housing facilities made available by the state. As a result, claimant's death, which occurred in a fire while he was in the house furnished by the state, was compensable.

■ If the supreme court could hold in *Johnson* and *Hunley* that the circumstances "required" the claimants there to live on the premises, it would certainly follow that the modified employment contract of the claimant *sub judice* would also "require" him to live at the Fort. Ample consideration for the contract is indicated by the record. The claimant received a free trailer space and free utilities in exchange for his being available and present at the Fort on a 24–hours a day basis to assist in escapes, blackouts, etc. The record is also clear that the presence of the claimant substantially benefited the state-employer by its having personnel available for a fast response to problems as they arose at Fort Grant. Under the circumstances in this review, we are of the opinion that the administrative law judge's conclusion in paragraph 7 of the award that claimant was "not required" to live on the premises of the state because of the modified employment contract is incorrect and is not supported by the record.

Our opinion is further supported by 1A A. Larson, *Workmen's Compensation Law* § 24, *et seq.* (1985). Larson summarizes the law regarding employees "required" to live on the premises who are *continuously on call* as follows:

> Injuries to employees required to live on the premises are generally compensable if one of the two following features is present: either that the claimant was continuously on call, or that the source of injury was a risk distinctly associated with the conditions under which claimant lived because of the requirement of remaining on the premises.

*Id.* § 24.10 at 5–213.

The claimant in this instant review was on continuous call to respond to emergency situations at Fort Grant. Thus, the majori-

ty rule would apply to justify compensation to the claimant here. Illustrative cases of the rule are *Wallace v. Green Thumb, Inc.,* 296 Or. 79, 672 P.2d 344 (1983) (a watchman living in his own trailer on the employer's premises was injured when his butane stove exploded while he was preparing dinner. He was continually on call and entitled to compensation); *DeBow v. First Inv. Property, Inc.,* 623 S.W.2d 273 (Tenn.1981) (a resident assistant apartment manager on continuous call was stabbed by her ex-boyfriend in an apartment furnished her by the employer. She was entitled to compensation); *Texas Employers Ins. Ass'n v. Prasek,* 569 S.W.2d 545 (Tex.Civ.App.1978) (claimant was on 24–hour call. He choked to death while eating a piece of steak at a meal in the company trailer. The death was compensable).

A close case factually to this instant review is *Arnold v. State,* 94 N.M. 278, 609 P.2d 725 (App.1980). The facts were that plaintiff was employed by the State of New Mexico at the Fort Stanton facility. She resided in a house on the premises. She was not required to live on the premises, but this was an incentive for the employees to work at the facility which is in a remote area. The rent was $10.00 per week. The lease agreement made it mandatory for her to take part in search and rescue missions for students who wandered off campus and to help fight fires. She was also expected, during her off hours, to take care of students wandering around campus by either taking them to their proper building or by notifying someone in authority.

Plaintiff worked from 6:00 a.m. to 2:00 p.m. She alleged that she was assaulted and raped in her residence at 10:30 p.m. by one of the mentally retarded students at the facility. The New Mexico Court of Appeals stated:

Here, plaintiff, although not required to live on the premises, had no reasonable alternative. She testified that Capitan was seven miles away, but had no housing available; that Ruidoso was twenty-seven miles away, but nothing could be found under $200.00 per month; that she was making $542.00 per month; and that it was cheaper and more convenient to live on the premises. Further,

her presence on the premises was beneficial to her employer.

Given the foregoing and the fact that plaintiff was required, if living on the leased premises to help fight fires and participate in search and rescue, we hold that plaintiff's injuries arose out of and in the course of her employment. Section 52–1–9, N.M.S.A.1978. Accordingly, the Workmen's Compensation Act is applicable and the "bunkhouse" rule applies. *Hunley v. Industrial Commission,* 113 Ariz. 187, 549 P.2d 159 (1976); *Wilson Cypress Company v. Miller,* 157 Fla. 459, 26 So.2d 441 (1946). The Workmen's Compensation Act remedy is exclusive. *Williams v. Montano,* 89 N.M. 252, 550 P.2d 264 (1976).

The respondent contends that the award should be affirmed on the basis of two of our prior opinions: *D.E.S. Youth Conservation Corps. v. Industrial Commission,* 129 Ariz. 235, 630 P.2d 58 (App.1981), and *Gaona v. Industrial Commission,* 128 Ariz. 445, 626 P.2d 609 (App.1981). We believe that both cases can be distinguished from the review *sub judice.*

In *D.E.S.,* a youth conservation corps employee was hired to clear and clean desert areas. The employee was required to live in a residence at the camp facilities and was on call 24 hours a day. Knives were barred. The employee cut his finger on his pocket knife and filed a claim which granted compensation. We set aside the award stating:

In this case, respondent injured himself while engaged in a *purely personal activity,* namely using his own pocket knife which the employer's policy *forbade* him to have. The activity of the respondent employee did not benefit the employer beyond the general improvement of the employee's morale. *See generally* 1A A. Larson, The Law of Workmen's Compensation §§ 20, 22 (1979). (Emphasis added).

129 Ariz. at 237, 630 P.2d at 60.

The *D.E.S.* facts are not the factual situation present in this review. Claimant here was where he was authorized to be, by his employment contract, when he injured himself. His injury occurred on the state's

premises while he was on his way to his duty station. This injury did not arise from a purely personal activity of claimant as in *D.E.S.*

In *Gaona,* we affirmed the award denying compensation under the "bunkhouse rule" stating:

> Although this is a factually close case, it is our opinion there is reasonable evidence to support the decision of the administrative law judge. The evidence indicates that petitioner lived on the employer's premises because it was convenient and financially expedient to do so. Unlike the employees in *Hunley* and *Johnson* the petitioner here failed to meet his burden of proof to show that alternative housing was so impractical as to make living on the employer's premises, effectively, a requirement of employment.

128 Ariz. at 448, 626 P.2d at 612.

Thus, *Gaona* was a sufficiency of the evidence case and was factually different from this appeal. Petitioner in *Gaona* was not required to live on the employer's farm but did so because it was convenient for him. In addition, the claimant in *Gaona* was not on continuous duty call as was the claimant in the instant review.

In conclusion, we find as a matter of law that claimant's employment contract was modified to "require," in the sense of *Hunley, Johnson,* and the "bunkhouse rule," that he reside on the premises of his employer at Fort Grant, and that the injury he received in leaving his trailer arose out of and in the course of his employment. In addition, the fact that he was on continuous call in emergency situations further requires this result.

It is not necessary to address claimant's second issue because of our disposition of the first issue.

The award is set aside.

HAIRE, C.J., and FROEB, P.J., concur.