837 P.2d 451

**Judie R. LUJAN, Widow of Joseph R. Lujan, Deceased, Claimant–Appellant/Cross–Appellee,**

v.

**PAYROLL EXPRESS, INC., a/k/a Payroll Plus, Inc.; Leonard Jensen Logging; and United States Fidelity & Guaranty Company, Respondents–Appellees/Cross–Appellants.**

No. 13394.

Court of Appeals of New Mexico.

June 9, 1992.

Certiorari Denied July 16, 1992.

Gerald A. Hanrahan, Chavez Law Offices, Albuquerque, for claimant-appellant/cross-appellee.

Timothy R. Briggs, Thomas R. Mack, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for respondents-appellees/cross-appellants.

## OPINION

MINZNER, Judge.

Claimant-appellant Judie R. Lujan (Claimant) appeals from an order entered by the Workers' Compensation Administration denying her claims for death benefits for herself and her minor children. Claimant alleged that her husband, Joseph R. Lujan (Lujan), died in a compensable accident when he was accidentally poisoned by carbon monoxide at a job site. After a formal hearing, the Workers' Compensation Judge (WCJ) found that Lujan did not die of an accident arising out of and in the course of employment because the risk of accident was not incident to Lujan's employment. Therefore, the WCJ denied Claimant any benefits. Because we believe that the facts of this case cannot be distinguished from our Supreme Court's decision in *Allen v. D.D. Skousen Construction Co.*, 55 N.M. 1, 225 P.2d 452 (1950) [*Allen*], we conclude that the WCJ incorrectly applied the law to the facts in this case in denying Claimant benefits, and we reverse on this issue.

The WCJ further found that Lujan's average weekly wage was $240. In making that finding, the WCJ considered only Lujan's wages from Payroll Express, Inc. (Payroll), which had admitted being his employer, and the WCJ excluded sums paid to Lujan by Jensen Logging (Jensen). The WCJ excluded those sums because he found that Lujan received those sums as an independent contractor. We reverse and remand for further proceedings on the issue of whether Lujan was an independent contractor for purposes of the sums Jensen paid him.

Payroll and Jensen (Respondents) filed a cross-appeal, contending that, in the event we reverse the WCJ's finding that the acci-

dent was not a risk incident to employment, we should conclude that the WCJ erred in calculating Lujan's average weekly wage because he did not take into account the seasonal nature of Lujan's employment. We affirm on the issue raised by Respondents in their cross-appeal.

## I. FACTS.

Lujan had worked as a lopper since 1985 or 1986. As a lopper, Lujan was required to clean cutting sites of leftover debris after the trees were removed. He was first hired by Jensen. After Jensen contracted with Payroll to provide leased employees, Lujan became Payroll's employee, and Payroll leased his services to Jensen.

Under this arrangement, Payroll hired all of Jensen's employees and provided Jensen with payroll services and other benefits, such as handling all health and workers' compensation insurance matters. Payroll hired Jensen as on-site supervisor of the employees whose services Jensen had leased, and Jensen paid Payroll an amount that equalled the leased employees' wages, plus money sufficient to cover premiums for health and workers' compensation insurance. Payroll, however, was the record employer.

Payroll admitted that under this arrangement, Jensen retained on-site control of the employees, and that it had never hired, fired, or promoted a leased employee without the consent of the business owner to whom the employee was leased. Payroll also stated that the on-site supervisor/business owner is the only supervisor of the leased employees.

Jensen testified that he had the power to terminate Lujan at any time. He also said that lopping was a requirement of his logging business. Other loppers testified that Jensen came to the job sites to inspect their work and would tell them if their work was unsatisfactory. He also directed the crew to different job sites. At some point, he made Lujan supervisor of the lopping crew.

Some time in 1987, Lujan purchased chain saws and trucks from Jensen, and agreed that he would pay Jensen for the equipment from his earnings. Jensen and Lujan also agreed that, in addition to paying Lujan his hourly wage, Jensen would pay Lujan $4.00 per hour for each hour that a chain saw was operated. In exchange, Lujan agreed to bear the maintenance expense of the equipment.

Jensen directed Lujan and his crew to various job sites in New Mexico. Although the crew worked in different areas, the sites were in areas remote from the crew's home, which was Grants, New Mexico, and from other populated areas. As a result, Lujan and his crew camped on the job sites during the job periods and journeyed home on weekends, or every few weeks. The workers did this to save money and time, because the work began early, and the logging sites were usually far from any motel and accessible only by rough roads. Jensen did not require the workers to camp at the job sites and did not supply camping equipment for the workers to use.

At the time of his death, Lujan and his crew were working in the forest near Gallina, New Mexico, a site six to ten miles from a town and about thirty miles from the nearest motel room. Lujan was sleeping in a van he had purchased and had placed a charcoal cooker, or "hibachi," in the van. He lit the hibachi so that he would stay warm during the night. Lujan died from carbon monoxide released by the smoldering charcoal as he slept in the van on October 1, 1988.

The WCJ concluded that the law applicable to this case "is that in effect on and after 6–19–87 to before 1–1–91." *See* NMSA 1978, § 52–1–20 (effective until January 1, 1991), –28 (Repl.Pamp.1991). The parties agree with that conclusion, and we apply the statutes that the WCJ concluded were applicable.

## II. DISCUSSION.

After considering the facts of this case in light of *Allen,* we conclude that Lujan sustained an accidental injury arising out of and in the course of his employment within the meaning of Section 52–1–28(A). *Allen* holds, as this court has applied it, that a worker may establish that an injury arose

out of and occurred in the course of employment "if, in view of the nature of the employment setting and accommodations available, it was contemplated (as distinguished from required) that claimant should utilize the employer's bunkhouse or other on-premises sleeping facilities." *Arnold v. State*, 94 N.M. 278, 279, 609 P.2d 725, 726 (Ct.App.1980). If the worker makes that showing, the so-called "bunkhouse rule" applies. *Id.* at 280, 609 P.2d at 727.

■ The bunkhouse rule states that if an employee is required to live on the employer's premises, an injury suffered by the employee while reasonably using the premises is considered as occurring in the course of employment, even if the injury occurs during an employee's leisure time. *See Hunley v. Industrial Comm'n*, 113 Ariz. 187, 549 P.2d 159 (1976) (en banc) (cited in *Arnold*). Under the rule, the worker has the burden of showing "that alternative housing was so impractical as to make living on the employer's premises effectively, a requirement of employment." *Gaona v. Industrial Comm'n*, 128 Ariz. 445, 448, 626 P.2d 609, 612 (Ct.App.1981).

■ In this case, Claimant proved that Lujan's presence at the job site was necessary because no other accommodations were available within a reasonable distance, which was the same proof offered in *Allen*. 55 N.M. at 3, 225 P.2d at 453. It seems particularly unreasonable to suggest that the worker in this case had viable alternative sleeping arrangements, given that the facts introduced at trial showed that the nearest motel rooms were thirty miles away and rented for $20 per night with three people in a room. The WCJ found that Lujan's average weekly wage was $240, or $6 per hour. Based on that wage, the record indicates that other accommodations would have cost Lujan almost half of his daily wages. Even if we include the sums Claimant contends the WCJ should have considered, however, and viewed his average weekly wage as in excess of $527 per week, the distance to be traveled over the available roads precludes a determination that reasonable alternative accommodations were available.

Other authorities have also applied this test of reasonableness to various employer-employee situations. For example, Larson's treatise states "[l]ogically, ... even in the absence of a requirement in the employment contract, residence should be deemed 'required' whenever there is no reasonable alternative, in view of the distance of the work from residential facilities or the lack of availability of accommodations elsewhere." 1A Arthur Larson, *Workmen's Compensation Law* § 24.40 at 5–270 (1990). "The better view is that expressed in *Allen v. D.D. Skousen Construction Co.* . . . ." *Id.* at 5–271.

We are not persuaded that the fact that neither Payroll nor Jensen provided camping equipment distinguishes this case in any meaningful way from the facts in *Allen*. The important issue is whether camping at the job site was reasonably necessary to perform the tasks required by the employer. *See Allen v. Industrial Comm'n*, 158 Ariz. 292, 762 P.2d 579 (Ct. App.1988) (under bunkhouse rule, prison employee who was required to live on prison premises received injuries that arose out of and in course of his employment when he fell from steps of his mobile home; employee used his own trailer, but received free parking space and free utilities in exchange for being on twenty-four-hour call).

The fact that Payroll was nominally Lujan's employer is irrelevant. For purposes of resolving this issue, Payroll and Jensen are effectively one entity.

We are not certain whether the WCJ's decision that Payroll was Lujan's employer influenced the WCJ's decision on the first issue because the WCJ's letter decision is not part of the record. Because the findings do not indicate whether the WCJ viewed the issues as related, and in the absence of the WCJ's letter decision, we have assumed that the WCJ determined Lujan was an independent contractor of Jensen only insofar as he received additional sums from Jensen for use of the chain saws. We conclude that determination was relevant only for the purposes of calculat-

ing the average weekly wage under Section 52–1–20.

We also conclude that the accident arose out of Lujan's employment. To satisfy the "arising out of" test, a worker must be able to show that upon considering all the circumstances, it is reasonably apparent that a causal connection exists between the working conditions and the injury that results. *See Gutierrez v. Artesia Pub. Schs.*, 92 N.M. 112, 115, 583 P.2d 476, 479 (Ct.App.1978); *cf. D.E.S. Youth Conservation Corps v. Industrial Comm'n*, 129 Ariz. 235, 630 P.2d 58 (Ct.App.1981) (injury to employee who was using a forbidden pocket knife during his leisure hours while on the residential premises provided by the employer was not compensable). The evidence in this case established that Lujan's working conditions included camping at the job site. We think that on-site camping in northern New Mexico in October, when this accident occurred, must be said to have included a risk of accidental injury due to faulty heating devices. *Cf. Allen*, 55 N.M. at 5, 225 P.2d at 454 (holding that injuries suffered due to unexplained gasoline explosion at campsite were compensable).

We recognize that ordinarily our task in reviewing a WCJ's findings is to review the evidence in the record as a whole to determine whether substantial evidence supported the WCJ's decision. *See Evans v. Valley Diesel*, 111 N.M. 556, 807 P.2d 740 (1991). We also recognize that ordinarily the question of whether an accident occurs in the course of and arises out of employment is a question of fact, regarding which we owe deference to the WCJ's findings of fact.

This case is different because the essential evidence is not in dispute, and on that evidence there is controlling Supreme Court precedent. Under these circumstances, the issue is purely legal. *See Edens v. New Mexico Health & Social Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976) ("[W]here the historical facts of the case are undisputed, the question whether the accident arose out of and in the course of the employment is a question of law."); *cf. Urioste v. Sideris*, 107 N.M.

733, 736, 764 P.2d 504, 507 (Ct.App.1988) (citing *Edens;* concluding that question of whether injury arose out of employment was factual; "while some of the historical facts are undisputed, other key evidence is conflicting"). Unable to make a meaningful distinction between this case and *Allen,* we conclude that the "bunkhouse rule" applies and Lujan's death was caused by an accidental injury that arose out of and in the course of his employment.

In view of our holding on the application of the bunkhouse rule, we need not address Claimant's other arguments that she is entitled to compensation. However, it is necessary to examine whether substantial evidence supports the WCJ's decision that Lujan operated as an independent contractor of Jensen, and thus that his average weekly wage did not include any of the sums Jensen paid Lujan for renting the chain saws. On that issue, we conclude that the findings are insufficient to permit a meaningful review, and we remand to permit the WCJ to make additional findings as appropriate under an opinion of this court and cases discussed therein filed while this case was pending on appeal. *See Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 827 P.2d 838 (1991); *see also Yerbich v. Heald*, 89 N.M. 67, 547 P.2d 72 (Ct.App.1976) (discussing tests used to determine the status of the parties); *Burton v. Crawford & Co.*, 89 N.M. 436, 440, 553 P.2d 716, 720 (Ct.App.1976) (concluding that "relative nature of the work" test more helpful to determine a worker's status in ambiguous factual situations). The separate treatment of a portion of Lujan's compensation reflects the parties' characterization of the business relationship; however, that characterization may not reflect the substance of the relationship.

Lujan was the crew supervisor, yet the WCJ found that his hourly wage was the same as the other members of the crew. There was evidence in the record from Payroll's chief administrative officer (CAO) that Lujan was given a raise in May 1988 to $9.00 per hour, but subsequently his rate was reduced to $6.00 an hour on July 16, 1988. Payroll's CAO also testified that

Lujan received the raise on Jensen's recommendation and that all owners were free to pay leased employees additional compensation. Under these circumstances, we believe the findings made are insufficient to permit meaningful appellate review.

The WCJ's findings of fact stated that Lujan was an independent contractor, but they include no findings from which we can determine the basis of the WCJ's determination. We are concerned, for example, about the reduction in Lujan's wage from $9.00 to $6.00 per hour. If that reduction occurred because Jensen and Lujan agreed that the $4.00 an hour Lujan received for operating one of the chain saws was the equivalent of an hourly wage for operating that saw, we see no reason why that sum should not have been taken into account in calculating Lujan's average weekly wage. In addition, if Lujan accepted a lower hourly rate from Payroll in exchange for receiving $4.00 an hour for each of the chain saws he owned, we think that Claimant would be entitled to have all of the sums he received from Jensen included in calculating his average weekly wage.

This court has interpreted Section 52–1–20 to require that the fact finder "consider anything of value received as consideration for work when such consideration constitutes real economic gain to the employee." *Gonzales v. Mountain States Mut. Casualty Co.*, 105 N.M. 100, 102, 728 P.2d 1369, 1371 (Ct.App.1986). We construe that case as determining that sums should be considered in calculating wages when "they were intended by the parties to be further compensation for services rendered." *Id.*

In this case, we have no reason to think that the WCJ would not have included some or all of the sums Lujan directly received from Jensen but for the determination that Lujan was an independent contractor in receiving those sums. However, we cannot review that determination without additional findings. Because of the lack of findings on this issue, we remand with instructions that the WCJ make findings that indicate the analysis underlying his conclusion that Lujan was an independent contractor insofar as he received sums from Jensen for operation of the chain saws.

■ Respondents in their cross-appeal ask us to determine whether the seasonal nature of Lujan's work should have been considered by the WCJ when he calculated Lujan's average weekly wage. They assert that the WCJ erred by failing to consider the number of days Lujan actually worked as a lopper during the twelve months immediately preceding the accident. *See* § 52–1–20(B)(5). After a careful review of the record, we conclude that Respondents failed to preserve this issue for review. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 745 P.2d 717 (Ct.App.1987); *see also* SCRA 1986, 12–216(A).

We recognize that Respondents moved for summary judgment on the issue of the calculation of Lujan's average weekly wage and argued (1) for the exclusion of the sums Jensen paid Lujan directly for operation of the chain saws, and (2) that the seasonal nature of Lujan's work should be considered. After the motion was denied, however, they failed to offer any findings and conclusions to support consideration of the seasonal nature of Lujan's work. For these reasons, we believe that no ruling was fairly invoked at trial. We conclude that the issue raised on cross-appeal was not preserved.

## III. CONCLUSION.

The order entered by the WCJ is reversed, and the case is remanded for directions to amend the findings and conclusions entered to reflect this court's decision that Lujan died in an accident arising out of and in the course of his employment. We affirm the WCJ's decision that Lujan's average weekly wage can be calculated fairly under Section 52–1–20(B), but we remand so that the WCJ can make additional findings to support his conclusion that Lujan's average weekly wage should not include sums paid to him directly by Jensen for use of the chain saws Lujan had purchased or to enter a different conclusion,

supported by appropriate findings, if such a result is appropriate under *Whittenberg.*

IT IS SO ORDERED.

APODACA and FLORES, JJ., concur.