125 A.3d 1184

Laura O'ROURKE,

v.

WORKERS' COMPENSATION APPEAL BOARD (GARTLAND).

Appeal of Joshua Gartland.

Supreme Court of Pennsylvania.

Argued April 8, 2015.

Decided Oct. 27, 2015.

Daniel Warren Inadomi, Esq., Andrew B. Klaber, Esq., The Chartwell Law Offices, LLP, Pittsburgh, for Joshua Gartland.

Michael E. DeMatt, Esq., Greensburg, for Laura O'Rourke.

Amber Marie Kenger, Esq., Kathryn McDermott Speaks, Esq., Workers' Compensation Appeal Board, for Workers' Compensation Appeal Board.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

## *OPINION*

Justice STEVENS.

In this unique workers' compensation case, this Court granted allocatur to determine whether the Commonwealth Court erred in finding Laura O'Rourke ("Claimant") met her burden of proving that she sustained a work-related injury in the course and scope of her employment when she was

brutally stabbed by her son in the middle of the night while she was sleeping in her bedroom in her own home. While it is undeniable that these circumstances are tragic, we cannot conclude Claimant has shown her injuries are within the type of harm the Legislature intended to provide compensation for under the Workers' Compensation Act ("the Act") [1] and agree with the Commonwealth Court dissent, *infra*, which states it "defied logic" to find this case to involve a work-related injury. *O'Rourke v. WCAB (Gartland)*, 83 A.3d 1125, 1139 (Pa. Cmwlth.2014) (Leadbetter, J., dissenting). As a result, we reverse the Commonwealth Court's order.

Claimant was paid an hourly wage by accessAbilities, a state-funded program under the Department of Public Welfare (DPW), to provide attendant care for her thirty-three year old son, Joshua Gartland ("Employer"), who suffers from significant health issues related to his long-term drug use. This employment arrangement is guided by the consumer model of service delivery, which designates the individual requiring care as the official employer after he or she obtains a state tax identification number and a workers' compensation policy. As the employer, the consumer is responsible for hiring, training, disciplining, and terminating employees. The program acts as a payroll agent for any employees and ensures the employer's needs are met.

The parties' employment arrangement began several months after Employer had his leg amputated in 2007 at Presbyterian Hospital in Pittsburgh and spent six months at the Riverside Rehabilitation Center. While Employer was placed at Riverside, Maria Phillips of the Three Rivers Center for Independent Living (TRCIL) informed Claimant of the availability of numerous programs that would pay her to care for Employer in her own home until Employer's physical condition allowed him to live independently. Although Claimant had not lived with Employer since he was fifteen years old, Claimant allowed Employer to move into her home on July 7, 2008.

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1; 2501–2626).

Several weeks later, Employer and Claimant enrolled in accessAbilities. Claimant was hired to assist Employer with transfers, dressing, bathing, wound care, taking medication, preparing meals, doing laundry, and transportation. Employer received funding to receive 64 hours of care each week, but did not qualify to receive nighttime or 24–hour care. However, given the parties' living arrangement, Employer requested care during evening hours if Claimant was awake. Claimant would then log her nighttime hours on the next day of work. Claimant typically worked 40 hours Monday through Friday and 12 hours per day on Saturday and Sunday. Claimant recorded her hours on a time sheet or through Halo, a computerized system that allowed Claimant to use an identification number to clock in and out each day.

On Friday, April 10, 2009, Claimant returned home at approximately 10:00 p.m. after attending her usual bingo night. Upon her arrival, Employer asked Claimant to prepare him something to eat. Employer and Claimant began to argue as Claimant wished to change her clothes before getting him food. Claimant changed her clothes, got Employer his food, and made up the couch as Employer's bed. Claimant went to her first-floor bedroom and went to sleep around 11:30 p.m. Approximately two hours later, at 1:30 a.m. on Saturday, April 11, 2009, Employer burst into Claimant's bedroom, jumped on top of her, cut her throat, and stabbed her several times with a butcher knife. Each time Employer stabbed Claimant, he threatened, "I'll kill you, you fucking bitch." N.T. Hr'g, 7/2/09, at 82. Despite the violent nature of the attack, Claimant survived.

On May 7, 2009, Claimant filed a claim petition against Employer and the State Workers' Insurance Fund (SWIF) alleging she suffered a work-related injury in the course of her employment when she was stabbed by Employer while she was sleeping. Claimant asserted that as a result of the attack, she lost functioning in her left arm, sustained soft tissue damage, and suffers from psychological injuries. On October 27, 2009, Claimant filed a Petition to Review Medical Treatment/ Compensation Benefits, in which she averred she is

unable to return to work as she requires medical treatment and suffers from post-traumatic stress disorder (PTSD). SWIF filed an answer on behalf of Employer as it is responsible for any benefits owed to Claimant.[2]

The hearings before the Workers' Compensation Judge (WCJ) were bifurcated to initially determine whether Claimant sustained a work-related injury in the course of her employment. Claimant testified in person, explaining how the employment relationship came about and describing the attack in detail. Claimant admitted she did not understand why Employer attacked her as he did not have a history of violence. While Claimant acknowledged she and Employer had a disagreement hours before the stabbing concerning Employer's request for food, Claimant admitted the dispute "wasn't anything big." N.T. Hr'g, 7/2/09, at 74. When asked if she and Employer had issues that they argued about on a consistent basis, Claimant shared that Employer always asked her for money but she refused as she felt he would purchase drugs since he has had a drug problem since age sixteen. When asked if she believed Employer was on drugs during the attack, Claimant indicated that while Employer was prescribed pain medication, she had control of the medicine and was responsible for giving it to Employer. Claimant also shared that shortly before the stabbing, she was in the process of obtaining legal guardianship of Employer's eight-year old daughter.

Tonya Volkman, an accessAbilities coordination specialist, testified by deposition. Volkman explained how Claimant was hired by Employer to provide state-funded care under the consumer model of service delivery. Volkman indicated she met with Employer and Claimant to discuss Claimant's duties set forth in a service plan created by TRCIL, the agency that referred Employer to accessAbilities. Volkman affirmed that neither the service plan nor Claimant's job description contained any requirement that Employer's service provider sleep

---

**2.** As SWIF is the party challenging the lower courts' decisions and Employer has no initiative to litigate this appeal, we will treat SWIF as the Appellant in this case.

overnight in his home. Volkman clarified that Employer did not qualify to receive overnight care, which is reserved for cases where an individual suffers a traumatic brain injury. Even if Employer qualified for 24–hour care, Volkman testified the provider would have been required to remain awake during the overnight shift. In addition, Volkman reviewed Claimant's timesheets and indicated Claimant never recorded late night or early morning hours of care.

In an interlocutory order dated August 4, 2010, the WCJ concluded Claimant's injuries were compensable under the Act. Initially, the WCJ acknowledged Claimant was not engaged in the furtherance of Employer's business or affairs at the time of her injury as Claimant was sleeping when she was attacked, Claimant did not routinely provide Employer care in the middle of the night, and Employer did not qualify to receive overnight care. Nevertheless, the WCJ found Claimant was entitled to compensation as "her employment required her to be on the employer's premises at the time that she sustained her injuries." WCJ Op., 8/4/10 at 6.

In addition, the WCJ found SWIF failed to establish the attack "was motivated by reasons that were strictly personal to [Claimant] and not related to their employment relationship." WCJ Op., 8/4/10 at 5. However, the WCJ also made a specific finding that Claimant's testimony "taken as a whole, did not establish[ ] that the attack occurred as a result of the argument over her changing her clothes before fixing [Employer] food on April 10, 2010." *Id.* at 4.[3] The parties then litigated the remaining issues, including the extent of Claimant's injuries and the amount of compensation due. By order dated January 10, 2011, the WCJ awarded Claimant compensation of $466.16 per week beginning April 12, 2009, as well as

3. The WCJ also took notice of the Court of Common Pleas criminal docket sheets which indicated Employer pled guilty to attempted murder, simple and aggravated assault, and recklessly endangering another person. As such, the WCJ observed the parties could not obtain Employer's testimony due to the pending charges and noted Employer's testimony was not obtained after his guilty plea as he was transferred to a correctional facility outside the local area.

47 weeks of compensation for disfigurement. Both parties appealed.

On August 9, 2012, the Workers' Compensation Appeal Board (WCAB) reversed the WCJ's decision to award Claimant compensation. The WCAB held Claimant was not injured in the course of her employment as she was neither furthering Employer's business nor required by the nature of her employment to be on the premises at the time of her injury. WCAB Op., 8/9/12, at 4 (citing *WCAB (Slaugenhaupt) v. U.S. Steel Corp.,* 31 Pa.Cmwlth. 329, 376 A.2d 271, 273 (1977)). The WCAB reasoned that Claimant was no longer required by the nature of her employment to remain on the premises once she completed her work duties and went to bed. The WCAB found Claimant lost her "employee status" and became a resident of her home after she "embarked on a course of 'recreation' separate and distinct from the duties of her employment." WCAB Op. at 6. Moreover, the WCAB also determined Claimant failed to prove the attack was related to the employment relationship as there was no evidence to show why the attack occurred or Employer's motive for the attack.

In a published, *en banc* opinion filed on January 8, 2014, the Commonwealth Court reversed the WCAB's decision. *O'Rourke v. WCAB (Gartland),* 83 A.3d 1125 (Pa.Cmwlth. 2014), *appeal granted in part,* 626 Pa. 297, 96 A.3d 1021 (2014). Although the Commonwealth Court agreed Claimant was not engaged in the furtherance of Employer's business when she was injured, the Commonwealth Court majority found Claimant was entitled to compensation as she was "practically required" to live on the premises by the nature of her employment. *Id.* at 1135. The Commonwealth Court majority applied the "bunkhouse rule" announced in *Malky v. Kiskiminetas Valley Coal Co. et al.,* 278 Pa. 552, 556, 123 A. 505, 506 (1924), which it construed as providing that an employee injured while sleeping on the employer's premises will be eligible for compensation if the nature of the employment demands that the employee live on the premises. Applying this logic to the instant case, the majority reasoned that although Claimant was not contractually required to live on

her work premises, she was practically required to live with Employer given the hours and nature of her employment and the fact that Employer did not have his own residence or a place in which he could receive attendant care. As Employer occupied Claimant's home and designated it his legal residence, the Commonwealth Court majority deemed Claimant's entire residence to be Employer's "premises." *O'Rourke*, 83 A.3d at 1137.

The Commonwealth Court majority also recognized the Workers' Compensation Act does not cover injuries caused by a third-person intending to injure the employee due to personal reasons not connected to his employment. However, the majority provided that "[w]hen an employee is injured on the work premises by the act of another employee, there is a rebuttable presumption that the employee is covered by the Act." *Id.* at 1138 (quoting *General Electric Co. v. WCAB (Williams)*, 50 Pa.Cmwlth. 45, 412 A.2d 196, 197 (1980)). As a result, the majority observed that the employer carries the burden of proof of establishing the claimant's injuries were the result of an attack caused by personal animus. *Id.* The majority agreed with the WCJ that SWIF failed to show the attack was motivated by personal animus and was not related to the employment arrangement as Employer's reason for assaulting Claimant was unknown. Accordingly, the majority found Claimant's injuries were compensable.

Judge Leadbetter was the sole dissenter, filing a brief opinion to express her disagreement with the majority's holding. Based on the facts of this case in which Claimant was awarded benefits after being stabbed by her son in the middle of the night in her bed in her own home, Judge Leadbetter felt it "defied logic to call this incident a work-related injury." *Id.* at 1139 (Leadbetter, J., dissenting).

This Court granted SWIF's petition for allowance of appeal filed on behalf of Employer to address whether Claimant's injury was compensable under the Act and to determine whether the "bunkhouse rule" as set forth in this Court's decision in *Malky* is applicable under these circumstances. In

a workers' compensation case, our review is limited to determining whether constitutional rights have been violated, an error of law has occurred, rules of administrative procedure have been violated, or the necessary findings of fact are not supported by substantial evidence. 2 Pa.C.S. § 704; *Cruz v. WCAB (Kennett Square Specialties)*, 627 Pa. 28, 99 A.3d 397, 405–406 (2014) (citation omitted). As this appeal presents a question of law, our scope of review is plenary. *Kmart Corp. v. WCAB (Fitzsimmons)*, 561 Pa. 111, 116, 748 A.2d 660, 662 (2000).

Section 301(c)(1) of the Pennsylvania Workers' Compensation Act, *as codified,* 77 P.S. § 411, defines the terms "injury," "personal injury," and "injury arising in the course of his employment" for which an employee may be awarded benefits:

The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury [...]. The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; [...] but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and *shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.*

77 P.S. § 411(1) (footnote omitted) (emphasis added). Section 301(c)(1) plainly indicates that a claimant seeking workers' compensation must prove the injury arose in the course of employment and that it was related to the employment. *Lehigh Cnty. Vo–Tech Sch. v. WCAB (Wolfe)*, 539 Pa. 322, 327, 652 A.2d 797, 799 (1995).

■ This Court has determined that Section 301(c)(1) allows an employee to establish eligibility for workers' compensation under two distinct circumstances. First, an employee will be awarded benefits if he or she sustains an injury while "engaged in the furtherance of the employer's business or affairs, regardless of whether the injury occurred on the employer's premises." *Kmart Corp.*, 561 Pa. at 118, 748 A.2d at 664. If the employee was not furthering the employer's affairs, the employee may only receive compensation if the employee was (1) injured on premises occupied or under the control of the employer, (2) required by the nature of his employment to be present on the premises; and (3) sustained injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Id.*

Under the factual circumstances of this case, it is undisputed that Claimant had clearly departed from her work duties and was engaged in a purely personal activity when she was attacked while sleeping in her bedroom in her home in the middle of the night. As it is clear Claimant was not engaged in the furtherance of Employer's business at the time of her injury, the parties agree the first scenario is not applicable to this case.

■ Turning to the second scenario in which an employee is not engaged in the furtherance of the employer's business when injured, courts typically analyze first whether Claimant was on "premises occupied or under the control of the employer" at the time of her injury. 77 P.S. § 411(1). However, we need not decide that specific issue as the second prong of this analysis is dispositive: whether Claimant's presence in her bedroom at the time of the attack was "required by the nature of [her] employment." *Id.*

In addressing this issue, SWIF argues the Commonwealth Court incorrectly found Claimant was required to live with Employer in order to provide him attendant care through their employment arrangement. Specifically, SWIF criticizes the Commonwealth Court's application of the "bunkhouse rule" set forth in this Court's decision in *Malky*, in which employees were deemed to have been fatally injured in the course of their employment while sleeping in the employer's bunkhouse, where they were required to live due to the nature of their employment. *Malky*, 278 Pa. at 556–57, 123 A. at 506–507. The specific facts of *Malky* indicate that the employer coal mine, faced with a general workers' strike, provided its remaining employees lodging in a bunkhouse near the mine's entrance. While the miners were free to obtain lodging elsewhere, the workers' compensation referee found the circumstances of the strike made it practically impossible for the employees to secure lodging in the village near the mine. The employees in *Malky* were killed in an explosion when striking workers threw a bomb into the bunkhouse in the middle of the night. The referee denied compensation, finding the employees were not required to be on the employer's premises at the time of the explosion. The Board overruled the referee's decision and awarded compensation for the employees' deaths.

This Court affirmed the Board's decision in *Malky*, finding the Act allows compensation for injuries an employee sustains in their leisure time while occupying a bunkhouse or sleeping quarters provided by the employer if the nature of the employee's work mandates that the employee reside on the employer's premises. *Id.* at 556, 123 A. at 506. Under the circumstances in *Malky*, this Court found it was necessary for the employer mine to keep its workers on its premises to further the needs of the employer and allow the mine to continue operating during the strike of union miners. This Court specifically noted the employer mine controlled the movements of the workers during all hours of the day and prevented them from having contact with striking miners that sought to intimidate them from returning to the mine. Infer-

ring that the employer's action in furnishing sleeping quarters suggested it believed the workers' presence was necessary to continue mine operations, this Court found the workers' presence in the employer's bunkhouse was required by the nature of their employment.

Returning to the facts of the case before us, SWIF challenges the Commonwealth Court's conclusion that Claimant was "practically" required to live with Employer due to the nature of her job and the fact that Employer did not have another residence in which he could receive attendant care. Employer distinguishes this case from *Malky*, in which the mine employer exerted nearly complete control over its employee's time and actions and its provision of lodging was "clearly designed to benefit the employer rather than the employee." Brief of Employer, at 15–16. In response, Claimant contends the Commonwealth Court's decision is consistent with *Malky* as the workers were not contractually required to live in the mine's bunkhouse but had no reasonable alternative than to live on the employer's premises.

In several prior cases, we have analyzed whether an employee's presence on the employer's premises was required by the nature of his employment. In *Eberle v. Union Dental Co.*, 390 Pa. 112, 134 A.2d 559 (1957), this Court upheld the denial of compensation to an employee who was injured after he finished his work duties, left his employer's leased office in a commercial building, walked on to the public sidewalk, and subsequently slipped on a banana peel on a driveway used by his employer. This Court found the employee's presence on the driveway was not required by the nature of his employment as he was "no more than a member of the public using the sidewalk as a pedestrian" and the employer was not interested in the route the employee selected to go home after his work day had ended. *Id.* at 116, 134 A.2d at 561.

More recently, in *Kmart Corp.*, this Court reversed the award of benefits to a worker who was injured on her lunch break in a public restaurant on her employer's premises when she came to the aid of a coworker who was being assaulted by her estranged husband. *Kmart Corp.*, 561 Pa. at 124, 748

A.2d at 667. Although this Court recognized the *Kmart* employee may have felt compelled to help her coworker, this Court found the employee "failed to demonstrate an employment-related compulsion that necessitated her presence on the premises at the time of the attack." *Id.* at 123, 748 A.2d at 666. This Court also emphasized the fact that the worker found it "convenient" to eat her lunch on her employer's premises "in no way establishes that she was required to eat there" as she was free to leave the store. *Id.* at 124, 748 A.2d at 667.

We disagree with the Commonwealth Court's finding that Claimant was required to be on the premises at the time of her injury. Claimant's employment contract and job description did not require Claimant to work late-night shifts, provide 24–hour care, or be on call for Employer's needs as Employer did not qualify to receive funding for an overnight caretaker as his medical condition did not warrant such care. If Employer had chosen to hire another individual to come into his mother's home or his own residence to care for him, he could not require the caretaker to stay in the home during the late night hours. While Claimant's living arrangement allowed her to be close to Employer and was convenient to both parties, her presence in her bedroom in the middle of the night was not required by the nature of Claimant's employment.

In the same manner, Claimant was not required by her contract or the nature of her job as caretaker to live with Employer or provide him housing; the parties' living arrangement arose out of their familial relationship as mother and son. Employer lived in Claimant's home gratuitously as he was destitute and in need of shelter after leaving the rehabilitation facility. Employer moved into Claimant's home weeks before he enrolled in accessAbilities. Claimant testified that, even if she did not receive compensation to care for Employer, she probably would have allowed him to move back home because he is her son. Claimant's motivation to allow Employer to move into her home arose out of her perceived moral obligation to care for her son and not from an employment-

related compulsion that necessitated her presence in her bedroom at the time of the attack.

Moreover, the Commonwealth Court's reliance on this Court's decision in *Malky* is misplaced. The bunkhouse rule covers situations in which an employee's living arrangement on the work premises is reasonably necessary to perform the tasks required by the employer. The employees in *Malky* were required to be on their employer's premises 24 hours a day in order "to insure a supply of necessary labor" during the union miner strike. The employer mine in *Malky* controlled its workers' movements, confining them in their quarters in the bunkhouse to avoid them coming into contact with the striking miners who would seek to persuade or intimidate the workers from returning to their employment. In the instant case, Claimant was not, in any sense, required to remain on her work premises in her off-time.

■ In addition, the Commonwealth Court failed to recognize a key aspect of the bunkhouse rule; if an employee is required to live on the employer's premises, he or she should be compensated for injuries resulting from normal activities during the employee's leisure time on the "property controlled and used by the employer in his business." *Malky*, 278 Pa. at 556, 123 A. at 506. In other words, the bunkhouse rule imposes workers' compensation liability on an employer who requires his workers to live in employer-furnished premises, which the employer controls, maintains, and uses for his benefit. In *Malky*, the employer coal mine required its workers to live in the bunkhouse it constructed in order to continue mine operations during the union miners' strike. The coal mine, cognizant of the threat the strike posed to its workers, took security measures and hired a watchman to prevent interference by outsiders. This Court emphasized that a company's action in furnishing sleeping quarters for its employees indicates its belief that the employees' presence upon its premises was necessary in order to continue running its business.

In finding the bunkhouse rule applicable to this case, the Commonwealth Court applied several cases from other jurisdictions which found employees should be compensated for injuries occurring on the employer's premises as they were required to live there because there was no reasonable alternative housing option. However, the Commonwealth Court failed to recognize that the employees' living arrangements were reasonably necessary to perform the tasks required by the employer in those cases. *See Leo Polehn Orchards v. Hernandez,* 122 Or.App. 241, 857 P.2d 213, 216 (1993) (finding claimant's injuries were compensable as employer was required to furnish living quarters at its migrant worker labor camp as no reasonable alternative housing was available for its employees); *Lujan v. Payroll Express, Inc.,* 114 N.M. 257, 837 P.2d 451, 454 (Ct.App.1992) (finding it was reasonably necessary to camp at a job site in order to perform the tasks required by his employer due the lack of available accommodations elsewhere given the remoteness of the employer's job sites).

Moreover, another rationale underlying the bunkhouse rule is an "employee's reasonable use of the employer's premises constitutes a portion of the employee's compensation." *Pierre v. Seaside Farms, Inc.,* 386 S.C. 534, 547, 689 S.E.2d 615, 621 n. 5 (2010) (quoting George L. Blum, Annotation, *Injury to Employee as Arising Out Of or In the Course of Employment for Purposes of State Workers' Compensation Statute–Effect of Employer–Provided Living Quarters, Room and Board, or the Like,* 42 A.L.R.6th 61, 93 (2009)). In *Malky,* the employer coal mine was responsible for the condition of the bunkhouse and provided the living quarters to the miners free of charge as part of their compensation.

This case is fundamentally different from *Malky* for several reasons. First, Claimant's presence in her bedroom in the middle of the night was not reasonably necessary for her to complete her tasks as Employer's caretaker. The accessAbilities program did not consider it necessary to provide funding for Claimant to work as an overnight care provider as it determined Employer's medical condition did not necessitate

24–hour care. As such, the structure of the program dictated Employer could not require Claimant or any hired caretaker to live with him or be present during the late night hours. Moreover, the convenience of the parties' living arrangement did not establish Claimant was required to live with Employer in order to provide him care under the accessAbilities program.

Second, unlike *Malky*, the employer depended on his employee for housing in this unique situation. Employer did not supply living quarters for Claimant; if he had, it would have demonstrated his belief that Claimant's presence was necessary to perform her duties. Employer has no ownership or lease of Claimant's home, did not control or maintain the premises, and did not have any responsibility to ensure the premises were safe. Lastly, Claimant did not receive any financial benefit for allowing Employer to live in her home, but admitted she would have taken him in without compensation as Employer is her son.

We have consistently acknowledged the remedial nature of the Workers' Compensation Act which is intended to benefit workers, but are "also mindful that the Act was not intended to make the employer an insurer of its employees' lives and health." *Kmart Corp.*, 561 Pa. at 119, 748 A.2d at 664 (citing *Ginther v. J.P. Graham Transfer Co.*, 348 Pa. 60, 63, 33 A.2d 923, 924 (1943)). As Claimant was not engaged in the furtherance of her Employer's business when she was injured while sleeping in her bedroom nor was she required by the nature of her employment to be in her bedroom at the time of the attack, we conclude Claimant's injuries were not sustained in the course of her employment and are not compensable under the Workers' Compensation Act. Accordingly, we reverse the order of the Commonwealth Court.

Justices EAKIN and BAER join the opinion.

Chief Justice SAYLOR concurs in the result.

Justice TODD files a dissenting opinion.

Justice TODD, dissenting.

The highly unusual facts of this appeal do not, in my view, provide a suitable vehicle for overarching pronouncements from this Court. For that reason, in my opinion, it was improvident to grant review. Nevertheless, having the appeal before us, but for reasons largely idiosyncratic to this case, I would affirm the decision below. Accordingly, I dissent.

At the time of the attack in her bedroom, it was uncontested that Laura O'Rourke ("Claimant") was not "actually engaged" in furthering the employment relationship established with her son and employer, Joshua Gartland ("Employer"). *See Kmart Corp. v. W.C.A.B. (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660, 663–64 (2000) (construing the definition of "injury arising in the course of his employment" in 77 P.S. § 411(1)). As a result, to show her injuries were compensable under the Workers' Compensation Act, Claimant was required to show that she: (1) was on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (2) was required by the nature of her employment to be present on the premises; and (3) sustained injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Id.* In my view, the Commonwealth Court correctly concluded, in its 6–1 *en banc* decision, that Claimant met each of these requirements.

Regarding the second prong—whether Claimant was required by the nature of her employment to be present on the premises—which the majority found to be dispositive, the workers' compensation judge ("WCJ") made the following findings, as summarized by the Commonwealth Court:

Claimant was hired to provide a variety of attendant care services to Employer for a period of up to 64 hours a week; Employer could request Claimant to provide care anytime Claimant was awake; and Claimant worked evening hours on the weekend and evening hours on a sporadic basis during the weekdays. (WCJ's Findings of Fact Nos. 8–10, 15.) Significantly, Employer did not have another residence

in which to receive attendant care, and, under the circumstances of this case, the only feasible way for Claimant to provide Employer with attendant care was to do so in her home. (WCJ's Findings of Fact No. 19, R.R. at 53a.) Finally, [Maria] Phillips from the Three Rivers Center for Independent Living approached Claimant and specifically asked Claimant to provide care for Employer in her home, and the employment arrangement was approved by the agencies knowing that Employer was going to live with Claimant. (WCJ's Findings of Fact Nos. 6, 19.)

*O'Rourke v. Workers' Compensation Appeal Board (Gartland)*, 83 A.3d 1125, 1135 (Pa.Cmwlth.2014). I agree with the Commonwealth Court that these unusual facts support the WCJ's conclusion that Claimant was, in practice, required by the nature of her employment to live with Employer. *Id.* Indeed, the "work premises" was *her home,* and the WCJ found that providing care "in her home was crucial to the employment relationship." WCJ's Finding of Facts, 8/4/10, at ¶ 19; *see also* N.T. Hearing, 5/10/10, at 13 (Claimant testifying that Employer stated that living together was a condition of employment). In regard to this employment relationship, I find the majority's focus on the service plan established by Employer and Three Rivers Center for Independent Living, to which Claimant was not a party, as precluding evening or late-night shifts to be misplaced. *See* Majority Opinion at 434–35, 125 A.3d at 1191. Here, the WCJ specifically found that "as Mr. Gartland was the employer, he could request care during evening or night time hours provided the worker was awake." WCJ's Finding of Facts, 8/4/10, at ¶ 9. Under these facts, given that Claimant was employed in her home, the majority's conclusion that Claimant "was not, in any sense, required to remain on her work premises in her off-time," MO at 436, 125 A.3d at 1191, is, in my view, unsupported. For these reasons, I find this prong to be satisfied.

Like the Commonwealth Court, I would also find Claimant met the first and third prongs above.[1] Regarding the first

1. The majority did not discuss these prongs as it determined the second prong was not met.

prong—whether Claimant was on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on—in this peculiar case, there is only one possible work premises: Claimant's home. While Employer obviously did not "control" the premises, he most certainly occupied it, and it was where his "business"—his mother seeing to his health and personal care needs—was carried on; indeed, again, it was the only possible place this employer could have "carried on" his business affairs. Furthermore, to Employer's suggestion that Claimant's bedroom, where the attack occurred, was not part of Employer's premises, I agree with the lower court's common sense conclusion that "[i]f the employee and the employer are required to live together as a result of the employment arrangement, then the employee's sleeping quarters should be included as part of the employer's premises because sleeping is a necessity of life." *O'Rourke*, 83 A.3d at 1137.

Finally, regarding the third prong—whether Claimant sustained injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon—there is a rebuttable presumption that, when an employee is injured by another employee at work, the injury is work-related. *See Kohler v. McCrory Stores*, 532 Pa. 130, 615 A.2d 27, 30 (1992). I agree with the Commonwealth Court that this presumption should apply here, even though the assault was perpetrated by Claimant's *employer*. *See O'Rourke*, 83 A.3d at 1138. Given this presumption, and given that the WCJ found Employer failed to rebut it by showing any personal reason for the attack, *see* WCJ's Findings of Fact, 8/4/10, at ¶ 18, I conclude this final prong is met as well.

I recognize that this is not a typical workers' compensation case. Indeed, the son-employer, mother-employee relationship found here is incongruously atypical. Yet, that relationship, created by a state-funded program, was a bona fide employer-employee relationship to which the Workers' Compensation Act applies. Further, that Act is remedial in nature, and must be liberally construed to effectuate its humanitarian objectives. *School District of Philadelphia v. W.C.A.B. (Hilton)*,

632 Pa. 10, 117 A.3d 232, 241–42 (2015). With that principle in mind, I find the unique facts of this case fit the definition of compensable injury under the Act. *See Kmart.* Accordingly, I dissent.