689 S.E.2d 615

Frantz PIERRE, Appellant,

v.

SEASIDE FARMS, INC., Employer, and American Home Assurance Insurance Co. c/o AIG, Carrier, Respondents.

No. 26777.

Supreme Court of South Carolina.

Heard Oct. 20, 2009.

Decided Feb. 16, 2010.

536

Ilene Stacey King, of Turnipseed & Associates, of Columbia; Shaundra F. Young and James Hadstate, both of North Charleston; and Andrew H. Turner, of Southern Poverty Law Center, of Montgomery, AL, for Appellant.

Stephen L. Brown, Catherine H. Chase, and Lee Louis Gremillion, IV, all of Young Clement Rivers, of Charleston, for Respondents.

Justice BEATTY.

The South Carolina Workers' Compensation Commission denied Frantz Pierre's claim for benefits for an injury he sustained while employed as a migrant worker with Seaside Farms, Inc. Pierre fractured his right ankle when he fell on a wet sidewalk at housing supplied by his employer. The circuit court affirmed, and Pierre appeals. We reverse and remand, finding Pierre's injury is compensable under South Carolina's workers' compensation law.

## FACTS

The facts in this case are undisputed. Seaside Farms, Inc. operates a 400–acre tomato farm and has a packing house on St. Helena Island, South Carolina. Pierre, a legal resident, was recruited as a seasonal worker by a crew leader for Seaside Farms and arrived in South Carolina from Florida on June 5, 2003. On that date, he completed paperwork at Seaside Farms and signed a written document entitled, "Terms and Conditions of Employment."

Under the terms of employment, Pierre's work week was Monday through Sunday, and the base pay for actual work time in the packing house was $6.00 per hour. The terms further provided: "There are not any set hours or days in this

job, as it varies with picking in the field. Bad weather may delay or cancel work." According to the president and co-owner of Seaside Farms, at peak conditions, work would start around noon for those employed in the packing facility (as opposed to those harvesting) and could run until midnight or 1:00 a.m. He stated there are no regular hours for the employees because they "work as the season dictates and as we can harvest."

The terms also provided that Seaside Farms would supply housing to the migrant workers at no charge. Seaside Farms had three housing areas, and most of the individuals working in the packing facility resided at the Land's End housing, which was about four or five miles from the packing facility. The Land's End housing was a block building with a tin roof and barracks-type rooms on both sides, with showers and a kitchen in the middle. Each room held three people, and up to 96 people could reside there. Outside the building there was also a sink for washing clothes and other items.

As soon as Pierre finished his paperwork around 4 p.m. or 5 p.m. on June 5, 2003, the crew leader drove Pierre to the housing supplied by Seaside Farms at Land's End. Pierre was scheduled to begin work the next morning. Transportation of the workers from the housing area to the packing facility and back each day was the responsibility of the crew leader as the workers did not own vehicles and it enabled the entire packing crew to arrive simultaneously to start the production line.

Pierre put his clothing in his room and decided to walk outside to look around. Just after 6:00 p.m., Pierre was exiting the building when he fell on a wet sidewalk as he walked out the door. Pierre noticed a woman was using the outside sink and water was flowing down the sidewalk in front of the building at the time he fell. Pierre was taken to a hospital, where it was determined he had fractured his right ankle.

Seaside Farms thereafter terminated Pierre's employment, and he was not immediately able to obtain other employment due to his fractured ankle. Pierre filed a claim for workers' compensation benefits, alleging he suffered his injury in the course and scope of his employment at Seaside Farms. Pierre asserted the accident took place in an employer-owned labor

camp, the employer benefited from Pierre living at nearby housing, he was required by necessity to live there, and the accident occurred in the context of his reasonable use of the housing facility as contemplated by the employer. Pierre sought temporary total disability compensation from June 5, 2003 to January 31, 2004; causally-related medical treatment to date; and future medical treatment, including surgery.

The hearing commissioner determined Pierre had not sustained a compensable injury because he was not injured during the course and scope of his employment. Specifically, the hearing commissioner found Pierre "was under no requirement to live in the employer provided housing pursuant to his contract for employment" and his work did not require that he be on continuous call. In addition, he was not engaged in any activities that were calculated to further, either directly or indirectly, the business of his employer. Finally, the wet sidewalk where Pierre fell was not different in character or design from other sidewalks, and the risk associated with slipping on the sidewalk was not one uniquely associated with his employment; rather, it was one he would have been equally exposed to apart from his employment.

The Commission's Appellate Panel upheld the hearing commissioner's order and incorporated it by reference. However, one member separately wrote to state that, although he agreed with the hearing commissioner's refusal to adopt the "bunkhouse rule," he disagreed with the hearing commissioner's conclusion that Pierre's accident did not arise out of his employment because the sidewalk in question was no different in character or design from any other sidewalk. The member stated this was too narrow a reading of the requirement that the accident "arise out of" the claimant's employment.

Pierre appealed to the circuit court, arguing his accident did arise out of and in the course of his employment and that Seaside Farms furnished the labor camp housing as part of his compensation. He alleged he "was functionally required to live in the ... labor camp housing for lack of [a] reasonable alternative, in view of the distance of the work from residential facilities and the lack of availability of accommodations elsewhere." Additionally, "[t]he erratic work schedule described by [the] employment contract and in respondent's

[Seaside Farm's] deposition testimony, indicates that [he] may have been summoned from [the] labor camp housing to work in [the] tomato packinghouse facility at odd and irregular hours." Pierre also alleged the wet sidewalk where he fell was a peculiar hazard to which he was exposed only as a result of his employment with Seaside Farms.

The circuit court affirmed. The court noted the parties had stipulated that Pierre was an employee under the South Carolina Workers' Compensation Act at the time of his injury. The court concluded Pierre's accident did not arise out of and in the course of his employment with Seaside Farms because he was not performing any duties for his employer when the accident occurred. The court stated Pierre's proposed common-law theory of the "bunkhouse rule" was not applicable, in any event, as it does not apply when the employee is not *required* to reside in the employer-supplied housing. Pierre appeals.

## STANDARD OF REVIEW

The Administrative Procedures Act (APA) provides the standard for judicial review of decisions by the Commission. *Geathers v. 3V, Inc.*, 371 S.C. 570, 641 S.E.2d 29 (2007); *Shealy v. Aiken County*, 341 S.C. 448, 535 S.E.2d 438 (2000); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). An appellate court can reverse or modify the Commission's decision if it is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record. *Fishburne v. ATI Sys. Int'l*, 384 S.C. 76, 84, 681 S.E.2d 595, 599–600 (Ct.App.2009) (citing S.C.Code Ann. § 1–23–380).

In workers' compensation cases, the Commission is the ultimate factfinder. *Jordan v. Kelly Co.*, 381 S.C. 483, 674 S.E.2d 166 (2009). "This Court must affirm the findings of fact made by the full commission if they are supported by substantial evidence." *Tennant v. Beaufort County Sch. Dist.*, 381 S.C. 617, 620, 674 S.E.2d 488, 490 (2009) (citing *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981)). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Id.*

■ Under the APA, a reviewing court determines whether the circuit court properly determined if the Commission's findings of fact are supported by substantial evidence in the record and whether the Hearing Panel's decision is affected by an error of law. *Geathers,* 371 S.C. at 576, 641 S.E.2d at 32.[1]

## LAW/ANALYSIS

■ A claimant may recover workers' compensation benefits if he sustains an "injury by accident arising out of and in the course of employment." S.C.Code Ann. § 42–1–160(A) (Supp.2009). "Arising out of" refers to the origin and cause of the accident; the phrase "in the course of" refers to the time, place, and circumstances under which the accident occurred. *Hall v. Desert Aire, Inc.,* 376 S.C. 338, 349, 656 S.E.2d 753, 758 (Ct.App.2007). An accident arises out of the employment when the accident happens because of the employment, as when the employment is a contributing proximate cause. *Sola v. Sunny Slope Farms,* 244 S.C. 6, 135 S.E.2d 321 (1964).

■ "In determining if an accident arose out of and in the course of employment, each case must be decided with reference to its own attendant circumstances." *Hall,* 376 S.C. at 349, 656 S.E.2d at 759. "The general policy in South Carolina is to construe the Workers' Compensation Act in favor of coverage, and any reasonable doubts as to construction should be resolved in favor of the claimant." *Id.* at 350, 656 S.E.2d at 759.

■ "Where employer and employee are subject to the compensation act, ... an injured employee should not be excluded from the benefits of the law upon the ground that the accident did not arise out of and in the course of his employment when there is substantial doubt (arising from the proven facts) of the propriety of such conclusion." *Pelfrey v. Oconee County,* 207 S.C. 433, 440, 36 S.E.2d 297, 300 (1945). "These words are construed broadly and should continue to be so

---

1. The South Carolina Legislature has since changed the review procedure for workers' compensation matters to eliminate review by the circuit court, but the change does not affect the procedure applicable to this case. *See generally* S.C.Code Ann. § 1–23–380 (Supp.2009) (regarding judicial review of administrative decisions); *id.* § 42–17–60 (concerning appeals of Commission awards).

construed." *Id.* (citation omitted). "Common sense indicates that a compensation law passed to increase workers' rights (because their common law rights were too narrow) should not thereafter be narrowly construed." *Id.* (citation omitted).

In finding Pierre's claim was not compensable, the circuit court relied in large part upon a North Carolina[2] case, *Jauregui v. Carolina Vegetables,* 112 N.C.App. 593, 436 S.E.2d 268 (1993). In *Jauregui,* the North Carolina Court of Appeals considered a claim by a migrant worker who was injured when he slipped and fell on a piece of soap as he walked down the steps outside a shower at the labor camp where he resided. *Id.* at 270. The worker testified he would not have taken the job if housing had not been provided by the employer. *Id.* The court considered the application of the "bunkhouse rule," and cited one version of the rule from Professor Larson:

When an employee is required to live on the premises, either by his contract of employment or by the nature of his employment, and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment. However, if the employee has fixed hours outside of which he is not on call, compensation is awarded usually only if the course of the injury was a risk associated with the conditions under which claimant lived because of the requirement of remaining on the premises.

*Id.* (quoting 1A Arthur Larson, *The Law of Workmen's Compensation,* § 24.00, at 5–234 (1993)).[3]

---

**2.** Both Pierre and Seaside Farms acknowledge that South Carolina has not had occasion to consider the application of the "bunkhouse rule" per se, although we have had cases where an employee has been injured while residing on the employer's premises or going to the employer's work camp. *See, e.g., Sola v. Sunny Slope Farms,* 244 S.C. 6, 135 S.E.2d 321 (1964) (holding an employee's death while traveling from a packing shed to a labor camp where he resided and performed additional duties arose out of and in the course of his employment); *Jolly v. S.C. Indus. Sch. for Boys,* 219 S.C. 155, 64 S.E.2d 252 (1951) (holding an employee's injury that occurred while he was off-duty and painting the hallway in the apartment supplied by his employer rent-free arose out of and in the course of his employment as a hog foreman and general utility worker at an industrial school).

**3.** Identical language on this general rule applied to resident employees now appears in 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* Scope & § 24.01 (2009).

The court found that, "although the nature of his employment arguably required that he live on the premises," Jauregui was not continuously on call and at the time of his injury was not engaged in a duty that was calculated to further, directly or indirectly, the employer's business. *Id.* at 271. The court noted there was no precedent in that jurisdiction for it to follow the bunkhouse rule, in any event, and without it the employee could not prevail. *Id.* at 271–72.

Initially, we note that, although South Carolina courts frequently look to North Carolina's rulings since our workers' compensation code is very similar, there is no requirement that we abide by North Carolina's determination for our own law, particularly since it was decided by an intermediate appellate court. *See Parrott v. Barfield Used Parts,* 206 S.C. 381, 34 S.E.2d 802 (1945) (stating North Carolina workers' compensation decisions, while generally persuasive, are not binding on this Court).

Further, we do not find *Jauregui* persuasive. The decision does not comport with emerging developments in workers' compensation law, as courts have become more cognizant of the realities of the particularized conditions under which migrant workers are employed. For example, although the North Carolina court ostensibly determined that Jauregui was not "required" to live at the labor camp, presumably because he was not contractually required to do so, this ignores the reality that virtually all of the migrant workers lived on the employer's premises as there was no real housing alternative, and their presence on the employer's premises benefited not only the workers, but also the employer, since the workers could be transported each day to begin work without delay. The employer could not have found workers if it had not provided housing since the wages earned by the workers did not enable them to afford housing in the area. Thus, the first premise in its analysis, i.e., that Jauregui was not required to live at the labor camp, is inaccurate.

The North Carolina court, despite its holding, acknowledged this fact when it observed that "the nature of his [Jauregui's] employment *arguably required* that he live on the premises." *Id.* at 271 (emphasis added). Therefore, in rejecting the bunkhouse rule, the North Carolina court failed to consider the full import of the definition that it quoted from Professor

Larson, i.e., that the rule applies when the employee is required to live on the employer's premises *either* by the employment contract *or* by the nature of the work involved.

In addition, North Carolina lacks a consistent rule in resident-employee cases, which is illustrated by the fact that compensation was awarded in another North Carolina decision, in which the employee was required by the nature of his work to live at the employer's remote work site in a foreign country. *See Chandler v. Nello L. Teer Co.*, 53 N.C.App. 766, 281 S.E.2d 718 (1981) (allowing benefits where the employee was stationed at a remote work camp for a road building project in Africa and the accident occurred as he was traveling back to his employer's camp after an off-duty excursion with friends; the court found the employee was killed in an automobile accident arising out of and in the course of his employment, even though he was returning after a personal frolic, because he was still within the confines of the employer's road project and was returning to his employer-provided sleeping quarters at the time of the accident).

In *Chandler* the court stated that "[i]t is clear that if [the employee] had been injured while sleeping in the camp, walking to the dining hall, inspecting one of Teer's completed roads, or participating in a Teer-organized softball game, his injuries would be compensable." *Id.* at 720. The court held that in such situations where the employer provided its employees with sleeping, eating, and recreational facilities within the project area, employees are "continuously in an employment situation" and are "protected by the provisions of the Workers' Compensation Act" while they are within the confines of the employer's premises. *Id.* at 721.

The *Chandler* decision was affirmed by the North Carolina Supreme Court, which stated it had "carefully examined the Court of Appeals' opinion" and found "that the result reached by the Court of Appeals, its reasoning, and the legal principles enunciated by it to be altogether correct" and that it would "adopt that opinion as [its] own." *Chandler v. Nello L. Teer Co.*, 305 N.C. 292, 287 S.E.2d 890, 891 (1982). Based on this fact and the reasonableness of the result, we find *Chandler* to be more persuasive here.[4]

4. *Cf. Ramsey v. S. Indus. Constructors, Inc.*, 178 N.C.App. 25, 630 S.E.2d 681, 685–86 (2006) (holding North Carolina has recognized that

Other jurisdictions have applied the bunkhouse rule under similar circumstances and found the injuries arose out of and in the course of employment where the employee was required, either by contract or by the nature of the work, to reside on the employer's premises, such as migrant workers, logging employees, and others who live at remote work sites. In such cases, the premises are considered an extension of the employer's primary work site. For the rule to apply, the injuries must have occurred during the employee's reasonable use of the premises and does include activities for personal comfort.

The Court of Appeals of Oregon analyzed the bunkhouse rule as a matter of first impression in the case of *Leo Polehn Orchards v. Hernandez,* 122 Or.App. 241, 857 P.2d 213 (1993). In *Hernandez,* the claimant, a migrant worker at a cherry orchard, sustained injuries at the employer's labor camp where she resided when she slipped and fell in a mud puddle as she walked from the housing area to an outdoor bathroom facility to empty her spouse's bedpan. *Id.* at 214.

The court remarked that there are a variety of specialized situations where the activities of the employee have been categorized to determine if there is a sufficient work connection to make them compensable. *Id.* at 215. One example is the personal comfort line of cases, which provide that such activities are compensable if they are either undertaken at work or, if the employee was not at work, if the employee was required to reside on the premises and was continuously on-call. *Id.* "The basic underpinning of those cases is that it is the obligation of employment to be on the premises that creates the risk of injury to the employee; when the employee is free to leave when he or she pleases, that employment connection does not exist." *Id.* "The bunkhouse rule represents an incremental extension of that line of cases." *Id.* "It is the obligation of employment to reside on the premises that

employees whose work requires travel away from their employers' premises are continuously within the course of their employment during such travel except when there is a distinct departure for a personal errand; the rationale for this rule is that while on a business trip, the employee must eat and sleep in various places in order to further the business of his employer).

subjects the employee to the risk that resulted in injury." *Id.* at 216.

The court observed that although Hernandez was not contractually required to live on the premises, there was no other practical alternative, as even the employer had acknowledged that housing was supplied only because there was no other place for the workers to stay. *Id.* at 216–17. The court noted: "Larson observes that . . . the 'better view' upholds compensability when living on the premises is practically required." *Id.* at 217 (citing 1A Larson, *Workmen's Compensation Law* 5–271, § 24.40 (1993)). The court next found that the injury resulted from the condition of the premises where she lived. In this case, Hernandez slipped in a mud puddle that was created by the employer's act of hosing down the outhouse areas as part of its routine maintenance at the camp. *Id.*

In another case involving migrant workers, the Supreme Court of Florida held an accident by an employee recruited from Jamaica to work for a sugar company in Florida was covered under workers' compensation law, applying the bunkhouse rule. *Carr v. United States Sugar Corp.,* 136 So.2d 638 (Fla.1962). The worker was injured when he slipped and fell on the stairs to his barracks as he was leaving to visit a worker in another barracks. *Id.* at 639. The court stated an injury may be compensable when either the contract *or* the nature of the work requires the worker's presence *and* the worker is making reasonable use of the employer's premises. *Id.* at 641.

The court noted that "the employer maintained the barracks for the obvious purpose of furthering the business of producing sugar so that the employees would be readily available to report for work in the fields at 7 A.M." *Id.* The court further noted that the employee was making reasonable use of the premises, as it must have been contemplated that the employees would be free to visit each other "rather than be confined when off duty exclusively to the particular barracks where the employee was required to live." *Id.*

The court observed that migrant farm workers, by the nature of their jobs, must travel to follow the harvesting of produce and thus they do not establish residences, so often

their housing is supplied as part of their employment;[5] additionally, their proximity to the farms benefits their employers since the products they are dealing with are perishable and providing housing "is an assurance that the workers are readily available at any time within a short distance from the work area." *Id.* (quoting *Dupree v. Barney*, 193 Pa.Super. 331, 163 A.2d 901, 906–07 (1960)).

In a case involving a logging employee, the New Mexico Court of Appeals also recognized the unique employment circumstances of workers who must live at remote work sites. *Lujan v. Payroll Express, Inc.*, 114 N.M. 257, 837 P.2d 451 (N.M.Ct.App.1992), *cert. denied* 114 N.M. 62, 834 P.2d 939 (1992). In *Lujan*, the employee died of carbon monoxide poisoning while residing in a van at a logging site that was accessible only by rough roads. *Id.* at 452.

The court, applying the bunkhouse rule and citing the preferred view, i.e., that "even in the absence of a requirement in the employment contract, residence should be deemed 'required' whenever there is no reasonable alternative, in view of the distance of the work from residential facilities or the lack of availability of accommodations elsewhere," found Lujan's death was the result of a compensable accident arising out of and in the course of his employment. *Id.* at 454 (quoting 1A Arthur Larson, *Workmen's Compensation Law* § 24.40 at 5–270 (1990)). The court stated "Lujan's presence at the job site was necessary because no other accommodations were available within a reasonable distance...." *Id.* at 454. The court remarked, "It seems particularly unreasonable to suggest that the worker in this case had viable alternative sleeping arrangements" where the nearest motels were thirty miles away and would have cost Lujan almost half of his daily wages to obtain. *Id.*

---

**5.** *See* George L. Blum, Annotation, *Injury to Employee as Arising Out Of or In the Course of Employment for Purposes of State Workers' Compensation Statute—Effect of Employer–Provided Living Quarters, Room and Board, or the Like*, 42 A.L.R.6th 61, 93 (2009) ("The bunkhouse rule is considered to be an extension of the general rule that, where an employee is injured while on the employer's premises as contemplated by the employment contract or the necessity of work, the employee will be compensated. One rationale behind the bunkhouse rule is that an employee's reasonable use of the employer's premises constitutes a portion of the employee's compensation.").

■ We find the reasoning in these cases persuasive and that they represent the modern view in employee-residence jurisprudence. Applying this reasoning, we conclude in the current appeal that the Commission's findings that Pierre was not required to live on his employer's premises and that his presence did not further, either directly or indirectly, the interest of his employer are not supported by substantial evidence. The president and part-owner of Seaside Farms stated that up to 96 people are allowed to reside in the Land's End camp, where most of the packers stayed. At peak operation, over 100 people were employed, and approximately 10 people (mostly locals who had their own housing) were retained year-round. Essentially, the crew leader would bring enough people to fill the housing. The company president testified that he provided housing to the workers as a cost of doing business because the workers had no other place to stay and his business could not operate if he did not provide the housing. The migrant workers did not earn enough to obtain housing, and short-term rentals that coincided with the time they would be in the area did not exist.

It is clear from the record that Pierre was required, not by contract, but by the nature of his employment, to live on-site near the packing facility as there was no reasonable alternative and virtually all of the workers at Seaside Farms lived in the housing provided by their employer. The employer absorbed the expense of housing the workers as the cost of doing business and to further its business, as it was convenient to have all of the workers ready to begin work at the same time, particularly those such as Pierre who were working in the packing house, which operates on an assembly-line basis.

In addition, we conclude the Commission's finding that the risk was not associated with Pierre's employment because the sidewalk was no different in character from other sidewalks is not supported by substantial evidence in the record. Pierre's accident occurred as a result of a hazard that existed on the employer's premises, i.e., Pierre slipped and fell on a wet sidewalk just outside the employees' housing facility. The sidewalk was wet because another person was using the outside sink and the water ran down the sidewalk. The employer's placement of the sink and the apparent lack of drainage created the wet conditions that caused Pierre to fall.

Thus, the source of the injury was a risk associated with the conditions under which the employees were required to live. But for the fact that Pierre's work essentially required him to live on his employer's premises near the farm, he would not have been exposed to the risk that caused his injury. Further, it is undisputed that Pierre was making a reasonable use of the premises at the time of his injury. *Cf. Hernandez*, 857 P.2d at 214 (stating the basic underpinning of cases finding compensability is that it is the obligation to reside on the employer's premises that subjects the employee to the risk that resulted in injury and creates the employment connection that does not exist when the employee is free to leave).

■ Although merely being on an employer's premises, without more, does not automatically confer compensability for an injury, we believe the circumstances of Pierre's accident—including the facts that he was required by the nature of his work to live on the employer's premises and such residence furthered the interests of the employer, the injury arose from a hazard existing on the employer's premises, and he was making reasonable use of the premises—establish the requisite work connection and compel a finding that Pierre's injury arose out of and in the course of his employment at Seaside Farms.

## CONCLUSION

Based on the foregoing, we hold Pierre's accidental injury arose out of and in the course of his employment and is compensable under our workers' compensation law. Pierre was essentially required to live on the employer's premises by the nature of his employment, and he was making a reasonable use of the employer-provided premises at the time of his accident. Moreover, his injury is causally related to his employment in that it was due to the conditions under which he lived, i.e., a wet sidewalk outside his building. Consequently, the decision of the circuit court is reversed and the matter is remanded for further proceedings in accordance with this opinion.

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in result only.