717 S.E.2d 751

Carolyn HOLMES, Petitioner,

v.

NATIONAL SERVICE INDUSTRIES, INC., and New Hampshire Insurance Company, c/o Gallagher Bassett Services, Inc., Respondents.

No. 27059.

Supreme Court of South Carolina.

Heard May 25, 2011.

Decided Oct. 24, 2011.

Rehearing Denied Dec. 16, 2011.

Malcolm M. Crosland, Jr., of The Steinberg Law Firm, of Charleston, for Petitioner.

Weston Adams, III, and William Thomas Bacon, IV, of McAngus, Goudelock & Courie, of Columbia, for Respondents.

Acting Chief Justice PLEICONES.

We granted certiorari to review the Court of Appeals' opinion in *Holmes v. Nat'l Servs. Indus.*, Op. No.2009–UP–364 (S.C. Ct.App. filed June 25, 2009).[1] We affirm.

## FACTS

Petitioner began working for respondent National Service Industries ("National"), a linen company, at its Charleston laundering facility in August 1984. According to petitioner, the work environment at the facility was "very hot" and "sticky" with "a lot of lint and dust in the air," and was poorly ventilated. Petitioner was exposed to the fumes of bleach and did not wear a protective mask.

In 1992, petitioner began experiencing breathing and sinus problems. Petitioner never experienced breathing or sinus problems prior to working for National. Petitioner's breathing was "good" when she was away from work. In 1993, National transferred petitioner to its Atlanta facility where the working conditions were worse than in the Charleston facility. Petitioner ultimately left her employment with National because the working conditions were making her breathing problems worse.

In 1995, petitioner visited Dr. Jefrey Lieberman, who diagnosed petitioner as suffering from sarcoidosis, a respiratory and pulmonary condition. Petitioner testified Dr. Lieberman told her he did not know what caused her sarcoidosis and that,

---

1. This Court has corrected the spelling of the employer's name to "National Service Industries" (rather than "National Services Industries") in the caption.

in light of this statement, she took no further steps to determine the cause of her condition.

In July 2005, petitioner visited Dr. Michael Spandorfer. Dr. Spandorfer stated in his report that it was unclear whether petitioner's work exposure at National caused her sarcoidosis, but that it was more likely that petitioner's exposure to the airborne particles and fumes worsened her condition, which had previously developed.

Petitioner filed a workers' compensation claim alleging a compensable injury by accident to her lungs and respiratory system arising out of and in the scope of her employment with National on July 12, 2005, the date she alleges she first discovered her sarcoidosis was related to her employment.

The single commissioner found petitioner sustained a compensable injury by accident to her lungs which was discovered on July 12, 2005.

The full commission reversed the commissioner, finding petitioner's claim was barred by the two-year statute of limitations. Specifically, the full commission found petitioner was aware of her working conditions and, with some diligence on her part, could have discovered she had a claim more than two years before her filing date.

Petitioner appealed. The circuit court and Court of Appeals, pursuant to Rule 220(b), SCACR, affirmed the full commission's determination that petitioner failed to file her claim within the statute of limitations.

## STANDARD OF REVIEW

■■■■ In workers' compensation cases, the Commission is the ultimate fact finder. *Jordan v. Kelly Co.*, 381 S.C. 483, 674 S.E.2d 166 (2009). An appellate court must affirm the findings made by the Commission if they are supported by substantial evidence. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." *Id.* The substantial evidence test "need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency

judgment;" and a judgment upon which reasonable men might differ will not be set aside. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981) (quoting *Dickinson–Tidewater, Inc. v. Supervisor of Assess.,* 273 Md. 245, 329 A.2d 18, 25 (Md.1974)).

## LAW/ANALYSIS

■ Petitioner argues the Court of Appeals erred in holding substantial evidence in the record supported the full commission's finding that petitioner's claim was barred by the statute of limitations. We disagree.

The right to workers' compensation for an injury by accident "is barred unless a claim is filed with the commission within two years after an accident. . . ." S.C.Code Ann. § 42–15–40 (Supp.2010).

■ Under the discovery rule, the statute of limitations begins to run from the date the claimant knew or should have known that, by the exercise of reasonable diligence, a cause of action exists. *Mauldin v. Dyna–Color/Jack Rabbit,* 308 S.C. 18, 20, 416 S.E.2d 639, 640 (1992).

■ Whether petitioner knew or should have known that her sarcoidosis was related to her employment with National over two years before filing her claim in 2005 is a question of fact for the commission. In our view, the Court of Appeals correctly held that substantial evidence in the record supported the full commission's finding that petitioner's claim was barred by the statute of limitations. Considering the record as a whole, there is substantial evidence that would allow reasonable minds to reach the conclusion that petitioner should have known she had a compensable injury when first diagnosed with sarcoidosis. *Pierre, supra.* There is evidence petitioner knew or should have known as early as 1992 her work environment was negatively affecting her health. Petitioner testified she experienced breathing problems and lesions when she was working at National's Charleston facility. Petitioner also testified her breathing was "good" when she was away from work and that she ultimately left her employment with National because the working conditions were making her breathing problems worse. Although reasonable

minds may differ as to whether petitioner should have known after being diagnosed with sarcoidosis that she had a compensable injury, this is not sufficient to set aside the judgment of the Appellate Panel. *Lark, supra.*

We requested the parties address whether the commission's findings regarding compensability and causation are the law of the case. Because we affirm the Court of Appeals' opinion regarding the statute of limitations issue, we decline to address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 518 S.E.2d 591 (1999) (when one issue is dispositive, the remaining issues need not be addressed).

## CONCLUSION

The Court of Appeals correctly found there was substantial evidence in the record to support the full commission's findings that petitioner's claim was barred by the statute of limitations. Accordingly, the opinion of the Court of Appeals is

**AFFIRMED.**

KITTREDGE, J., and Acting Justice E.C. BURNETT, III, concur.

BEATTY, J., dissenting in a separate opinion in which Acting Justice JAMES E. MOORE, concurs.

Justice BEATTY.

I respectfully dissent, as I believe the substantial evidence in the record demonstrates Carolyn Holmes's claim for workers' compensation benefits was filed within two years of the date she knew or reasonably should have known that she had sustained a *compensable* injury. It is not the mere existence of the injury, but also the reasonable discovery of its *compensable* nature, i.e., the nexus between the injury and the claimant's employment, that is required to trigger the running of the statute of limitations. Holmes saw no fewer than half a dozen different doctors, none of whom related her ongoing medical problems to her employment until 2005, and Holmes timely filed her claim two months thereafter. Holmes, as a layperson, should not be held to a higher degree of medical

skill than her treating physicians. This is especially true in light of the fact that medical experts universally acknowledge that sarcoidosis is a rare condition of unknown etiology that can encompass a multitude of seemingly unrelated symptoms. The discovery and evaluation of this complex condition is uniquely difficult, so a review of the events leading to Holmes's claim is illustrative.

## I.

National Service Industries, Inc. ("National") is a holding company for National Linen Service Corp., a textile rental business that supplies towels, washcloths, and sheets to hotels and restaurants. Holmes began working for National at its Charleston laundering facility in August 1984. It is undisputed that the building was very hot and poorly ventilated, and the air contained a large amount of dust, lint, and chemical fumes. National provided hair nets to its employees, but did not offer dust masks or any other form of respiratory protection.

In 1992, approximately eight years after Holmes began working for National, she began to have breathing and sinus problems, and some lesions appeared on her skin. Holmes took over-the-counter medications that seemed to help. The relief was short-lived, however, and Holmes eventually sought medical care before transferring to another National facility in Atlanta in 1993. Holmes's symptoms worsened, and she left National in 1994 after working at the Atlanta location for six months.

Holmes next worked for United Parcel Service for a year, and then worked for six months at the Shepherd Center, a rehabilitation hospital. During this time, Holmes's sinus issues remained the same. In 1995, during her tenure at Shepherd, Holmes sought treatment at Piedmont Hospital in Atlanta. The medical staff there diagnosed her as having allergy and sinus conditions and provided treatment in accordance with this diagnosis.

Holmes's symptoms persisted, so she again sought treatment and was seen later in 1995 by Dr. Jefrey D. Lieberman. Dr. Lieberman noted Holmes was suffering at that time from congestion with bloody drainage, "lumps" on various parts of

her legs, upper arms, and left cheek, and changes in pigmentation on her face. Dr. Lieberman diagnosed Holmes for the first time as having sarcoidosis, a highly variable, multi-systemic autoimmune disorder, and opined that her skin condition was indicative of the sarcoidosis and "that her sinus symptoms [were] secondary to the same process." He placed her on a course of medication. During this treatment, some of Holmes's symptoms improved. Holmes inquired as to the cause of her sarcoidosis and Dr. Lieberman told Holmes there was no known cause. He never advised her there was any possibility that it could be work-related. Holmes stated that, in light of Dr. Lieberman's statement, she had no reason to believe her condition could be related to her work. Rather, it was her understanding that sarcoidosis was something that "just happen[s]" or "just comes."

After working at Shepherd, Holmes was employed by Oak Hill Farm, a wine distributor, where her sinus symptoms continued unabated. Holmes subsequently changed doctors, but none of these doctors ever related her sarcoidosis to her employment.

Since her initial symptoms, Holmes had consulted at least half a dozen doctors before she was seen in 2005 by Dr. Michael Spandorfer, of Charleston. Although Dr. Spandorfer could not ascertain its cause, he determined that Holmes's sarcoidosis was aggravated by her employment with National from 1984 to 1994 and her exposure to airborne particulates and fumes. Dr. Spandorfer stated in a report dated July 12, 2005 that the work conditions at National triggered what could have been a dormant sarcoidosis condition. Dr. Spandorfer also diagnosed Holmes with occupational-onset asthma. This was the first time that a medical professional had ever linked Holmes's wide range of physical problems to her employment at National.

On September 7, 2005, less than two months after Dr. Spandorfer's evaluation, Holmes filed her workers' compensation claim. A single commissioner of the South Carolina Workers' Compensation Commission concluded Holmes sustained a compensable injury by accident on July 12, 2005, "the date o[n] which the Claimant reasonably discovered the compensability of [her] injuries."

In a split decision (2–1), the Appellate Panel reversed. The Appellate Panel, noting it could make its own findings of fact, found an employment relationship existed at the time of Holmes's injury by accident and that the parties had stipulated the amount of Holmes' average weekly wage and compensation rate. It further found that Holmes suffered from sarcoidosis and occupationally-induced asthma, "which was aggravated by, and whose development was contributed to by, her employment and exposure to airborne dust, fumes, and particulate matter," and that she will require ongoing medical treatment for her pulmonary injury. However, the Appellate Panel lastly found and concluded that Holmes's claim was, nevertheless, barred by the two-year statute of limitations contained in section 42–15–40 of the South Carolina Code.

The dissenting member of the Appellate Panel stated he would affirm the commissioner because throughout all of her visits to physicians, none ever indicated Holmes's sarcoidosis or sinus problems were related to her work at National until Dr. Spandorfer made this determination in 2005. Further, Dr. Lieberman told Holmes that he did not know where her sarcoidosis came from, and there is no evidence in the record that would indicate Holmes was negligent in relying on Dr. Lieberman's expert medical opinion.

Holmes appealed, challenging only the Appellate Panel's finding that the statute of limitations had run on her claim. She now appeals from the affirmance of the Court of Appeals. Thus, the only issue before this Court is the timeliness of Holmes's claim.

## II.

"Under the discovery rule, the statute would begin to run from the date [the claimant] either knew or should have known of her *compensable* injury." *Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 20, 416 S.E.2d 639, 640 (1992) (emphasis added). The claimant's knowledge of an injury, in and of itself, is not enough to commence the running of the statute of limitations. Rather, the claimant must also know or reasonably should have known that the injury is compensable. Compensability is the gravamen of the claim. The claimant must exercise reasonable diligence in discerning compensabili-

ty. *See Snell v. Columbia Gun Exch., Inc.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981) ("The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point. . . .").

The alleged lack of diligence by Holmes is the cornerstone of the Appellate Panel's finding that the statute of limitation bars her claim. The Appellate Panel found that Holmes knew or reasonably should have known that she had a compensable injury based on her sarcoidosis diagnosis in 1995. Further, it found her knowledge of her work conditions and her symptoms should have also alerted her to the compensability of her injury.

In my opinion, the substantial evidence in the record does not support these findings. Compensability requires a nexus between the injury and the employment that is known, or reasonably should have been known, by the claimant. The requisite nexus between Holmes's sarcoidosis and her employment at National could not have been known by Holmes before 2005, and she should not be charged with this knowledge at a time when it was not even known by the many medical experts who treated her.

The undisputed facts establish that in 1995 Dr. Lieberman, while diagnosing Holmes with sarcoidosis, failed to advise her of any causal relationship between her condition and her work at National. Instead, he told her that the cause of sarcoidosis was unknown and that her breathing and sinus problems were secondary to the sarcoidosis.

■ As noted by the dissenting member of the Appellate Panel, Holmes was entitled to rely upon Dr. Lieberman's expert medical opinion. The mere diagnosis of her sarcoidosis condition, without more, does not give rise to a compensable injury under our workers' compensation law, and Holmes could not simply assume the condition was work related in the absence of expert medical evidence. *See Mauldin*, 308 S.C. at 20, 416 S.E.2d at 640 (stating a workers' compensation claim must be for a "compensable" injury); *cf. Hanks v. Blair Mills,*

*Inc.,* 286 S.C. 378, 335 S.E.2d 91 (Ct.App.1985) (observing there are "non-compensable causes" that can accelerate or aggravate an occupational illness). Based on Dr. Lieberman's statement, a reasonable person would have believed that sarcoidosis is a malady, not unlike cancer, whose occurrence is both unfortunate and unpredictable.[2]

Dr. Lieberman's medical opinion is consistent with existing medical knowledge, which universally recognizes that sarcoidosis is a rare condition whose etiology is unknown by medical experts, that it can affect any organ in the body, and that its symptoms are highly variable from patient to patient. *See Booker v. Int'l Rivercenter,* 905 So.2d 498, 502 (La.Ct.App. 2005) (noting a physician's testimony that sarcoidosis has no known cause); *Hatem v. Bryan,* 117 N.C.App. 722, 453 S.E.2d 199, 200 (1995) (stating the plaintiff "suffered from sarcoidosis, a chronic disease process of unknown cause which may affect any organ or tissue of the body").

It is also consistent with the fact that Dr. Spandorfer, likewise, was unable to definitively state the origin of Holmes's sarcoidosis in 2005. However, Dr. Spandorfer was, in contrast to Dr. Lieberman and Holmes's prior physicians, able to discern a link between what might have been a dormant underlying condition and Holmes's employment at National in his report of July 12, 2005. In addition, July 12, 2005 is the first date Holmes was advised by Dr. Spandorfer that she also suffered from occupationally-induced asthma related to her work at National.

The record as a whole indicates that the variety of complex symptoms Holmes experienced, such as the respiratory problems, lumps, skin lesions, changes in skin pigmentation, joint pain, and swelling of the lower extremities, among others, were all within the wide range of symptoms that can arise

---

2. "Logically, an employee cannot be expected and certainly cannot be required to institute a claim until he has reliable information that his condition is the result of his employment." *Sellers v. Trans World Airlines, Inc.,* 752 S.W.2d 413, 416 (Mo.Ct.App.1988), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. 2003). "Just as logically, given that there must be competent and substantial evidence of this link, the claimant is entitled to rely on a physician's diagnosis of his condition rather than his own impressions." *Id.*

with sarcoidosis. At the same time, these symptoms were also indistinguishable from many other maladies. Merely being aware of her sarcoidosis symptoms would not alert Holmes to the compensability of her injury, especially when her treating physician told her sarcoidosis has no known cause and that her symptoms were secondary to the disease itself. Moreover, although Holmes commented at one point that her symptoms seemed to temporarily improve when she was away from work, Holmes also testified that her symptoms temporarily improved when she began taking over-the-counter medications, but ultimately, the symptoms persisted, even as she changed employers and work environments. Consequently, there was no definitive pattern to her condition.

The unique character of sarcoidosis undoubtedly made it more difficult for the medical experts to analyze as compared to conditions that uniformly manifest specific symptoms in a localized area. The fact that the current state of medical knowledge ascribes no known cause for this condition also proved to be an impediment to Holmes's physicians relating her sarcoidosis to her employment until it had progressed to the point where the connection was made by Dr. Spandorfer. Holmes went to a variety of physicians seeking medical treatment for her evolving array of symptoms. As a layperson, Holmes should not be penalized for, in essence, failing to detect what her own treating physicians had failed to discover prior to 2005. *Cf. Youngblood v. U.S. Silica Co.*, 130 S.W.3d 461 (Tex.App.2004) (reversing the grant of summary judgment based on the two-year statute of limitations and finding the fact that the employee continued to visit doctors from 1992 to 1997 was some evidence that he exercised reasonable diligence in ascertaining the cause of his silicosis and the employee did not discover his illness was work related and could not have assumed it was work related prior to the time he was so informed by a doctor in 1997).

Based on the foregoing, I would hold Holmes's claim regarding her sarcoidosis condition was filed within two years of when she knew or reasonably should have known that she had sustained a *compensable* injury. In addition, while the Appellate Panel found Holmes knew of her sarcoidosis diagnosis in 1995, there has been no allegation or finding that Holmes's occupationally-induced asthma existed at the time her sarcoi-

dosis was diagnosed. Rather, it subsequently developed as Holmes's health problems progressed and was diagnosed in 2005. The Appellate Panel's discussion regarding the statute of limitations focused only on the timing of Holmes's sarcoidosis diagnosis and her alleged failure to timely determine the relation of her sarcoidosis to her employment. The diagnosis of Holmes's sarcoidosis has no bearing on her later-developed asthma. Holmes's claim regarding her asthma was timely asserted within two years of when she knew or reasonably should have known she had a compensable injury in this regard.

The Court observed in *Mauldin* that statutes of limitation should not be applied mechanically, but in a manner consistent with both their underlying purposes and the need to provide substantial justice to all parties. *Mauldin,* 308 S.C. at 21, 416 S.E.2d at 640. The desire to protect defendants from false or fraudulent claims "must be balanced against a plaintiff's interest in prosecuting an action and pursuing [her] rights." *Id.* ' 'Plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed." *Id.* "The statute of limitations applicable to workers' compensation claims, like the Workers' Compensation Act as a whole, should be given liberal construction, and any reasonable doubts should be resolved in favor of coverage." *Rogers v. Spartanburg Reg'l Med. Ctr.,* 328 S.C. 415, 418, 491 S.E.2d 708, 710 (Ct.App.1997).

Allowing Holmes to recover for her injuries is consistent with the underlying purpose and objectives of the statute of limitations. Holmes's appeal presents an unusual case of a claimant with a rare condition; there is no allegation of a false or fraudulent claim and National has not been disadvantaged in its ability to evaluate the validity of the claim. As this Court has previously held, any doubts regarding the statute of limitations should be resolved in favor of coverage. This principle is particularly relevant in light of the fact that the Appellate Panel was itself divided on the statute of limitations issue.

### III.

Having determined Holmes's claim is not time-barred, I would further hold the unchallenged factual findings of the

Appellate Panel as to the compensability of Holmes's claim and her stipulated compensation rate are the law of the case. Therefore, I would reverse the decision of the Court of Appeals and remand this matter to the Commission for it to reinstate the order of the single commissioner.

Acting Justice JAMES E. MOORE, concurs.