<hr />

757 S.E.2d 528

**Jacqueline Y. CARTER, Respondent,**

**v.**

**VERIZON WIRELESS and American Home Assurance Co., Appellants.**

Appellate Case No. 2012–212924.

**No. 5191.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2013.

Decided Jan. 29, 2014.

Withdrawn, Substituted and Refiled April 16, 2014.

Grady Larry Beard and Nicolas Lee Haigler, both of Sowell Gray Stepp & Laffitte, LLC, of Columbia, for Appellants.

Jeremy Andrew Dantin, of Harrison White Smith & Coggins, PC, of Spartanburg, for Respondent.

CURETON, A.J.

After the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) denied Jacqueline Carter (Claimant) benefits for an alleged change of condition to her injured knee, the circuit court reversed. Verizon Wireless Southeast and American Home Assurance Company (collectively Employer) appeal, arguing the circuit court erred in reversing the Appellate Panel's determinations concerning a change in Claimant's condition, intervening causes,[1] and future medical treatment. Employer further argues the form of the circuit court's order adversely affected its ability to comply with appellate court rules. We affirm in part and reverse in part.

## FACTS

On December 27, 2006, Claimant suffered a work-related injury to her left knee. After Dr. Walter Grady performed surgery on her knee in June 2007, Claimant reached maximum medical improvement (MMI) on March 3, 2008. At that time, Dr. Grady assigned Claimant an 18% impairment rating.

In February 2009, Claimant fractured her right ankle and returned to Dr. Grady for care. She was wheelchair-bound for six to eight months while it healed. At her October 2009 workers' compensation hearing, Claimant stated her right ankle had healed completely. On December 3, 2009, Commissioner Barden awarded Claimant workers' compensation

---

1. We view the Appellate Panel's findings on intervening causes as alternative findings.

benefits for a 25% permanent partial disability to her left lower extremity, including causally-related medical care and treatment. Commissioner Barden found Claimant "had pre-existing advanced degenerative joint disease." Additionally, Commissioner Barden concluded Claimant was "entitled to causally-related future medical treatment that may tend to lessen her period of disability, as recommended by the authorized treating physician, *including* Darvocet or comparable medication."[2] (emphasis added).

In the summer of 2010, Claimant claimed to have noticed increased pain and swelling in her left knee. On November 4, 2010, she returned to Dr. Grady, who examined her and increased her impairment rating from 18% to 42%. On November 29, 2010, Claimant filed a Form 50, alleging she needed additional medical treatment due to a change of condition.

## I. Testimony

On February 3, 2011, the parties deposed Dr. Grady. Dr. Grady testified he typically told patients that if their pain level was constantly above a level five, they should consider a knee replacement. Although Claimant's pain level was constantly at level five or above in 2008, Dr. Grady did not recommend knee replacement to her at that time because (1) she was only forty-nine years old and (2) he believed a patient knew better than anyone else when he or she reached the point of needing a knee replacement. According to Dr. Grady, Claimant was eligible for a knee replacement going back to 2008, but whether or when to undergo the surgery was up to Claimant.

Dr. Grady opined that from the last time he saw Claimant in January 2008 to the date of his deposition, her knee had "materially worsened" due to natural degeneration of her arthritic condition. Based on his November 2010 examination, Dr. Grady determined Claimant's knee had materially worsened because her joint space had narrowed, the medial tibial femoral joint compartment had collapsed, and she reported increased pain. He calculated her increased disability level

---

2. Commissioner Barden's decision was apparently affirmed by the Appellate Panel.

based solely upon the two-millimeter narrowing of her joint space.

Dr. Grady testified he lacked sufficient information to determine whether any of Claimant's new complaints originated before or after the October 2009 hearing. Nonetheless, he stated his medical opinion, "within a reasonable degree of medical certainty," was that Claimant experienced "a natural progression of her disease process from the time that [he] did surgery on her until the time that [he] saw her on November 4th, 2010." He agreed that Claimant's worsening condition was "more of a degenerative[,] insidious, slow problem" rather than "acute in nature." Dr. Grady acknowledged his opinion was influenced by the nature of the exercise routine Claimant was participating in at the time she realized her knee pain was increasing. However, although Dr. Grady conceded her exercise possibly could have accelerated the deterioration in her condition, he believed the end result would have been the same, whether she exercised or not.

On February 16, 2011, the parties appeared before Commissioner Wilkerson. Claimant testified she was working as a bank teller and was able to sit or stand as needed to do her job. Claimant explained that after her right-ankle fracture healed and she was released from the wheelchair, she began exercising at the gym in order to lose weight and strengthen her knee. She became aware of increased problems with her left knee in June of 2010, after she started water aerobics. Claimant chose water aerobics over other exercise options because it limited the pressure on her knee, and Dr. Grady had recommended it for her after her surgery.

Claimant denied ever injuring herself while doing water aerobics. She was still doing water aerobics at the time of the hearing, despite the pain in her knee, and had lost forty-eight pounds since the previous summer. Claimant's pain level was an eight on a ten-point scale at the time of the hearing. Because Darvocet was no longer available, Claimant's family physician prescribed Tramadol for her. Claimant testified Tramadol did not adequately handle her pain. Claimant admitted the following statements from her 2009 hearing remained true: (1) she felt pain every day and every night, (2) the pain was "an uncomfortable throbbing feeling" that wors-

ened the more she worked, (3) she was unable to sleep without prescription medication, (4) she had difficulty walking long distances, (5) she could not walk more than about ten minutes without problems, and (6) she could not maneuver stairs without support.

However, according to Claimant, several of her complaints at the time of the hearing differed from her 2009 complaints. Specifically, the pain she felt at the time of the hearing was "[a]bsolutely" worse than the pain she felt in 2009, having risen from a five to an eight on a ten-point scale. She had crepitus on flexion and extension, evident by the crunching sound in her knee. Finally, her leg would not bend or flex as much as it had in 2009, and she had fluid on her left knee.

In an order dated April 18, 2011, Commissioner Wilkerson denied Claimant's request for benefits, finding she "did not sustain a compensable change of condition with regard to her left knee." He found "at least two intervening causes— Zumba [classes] as well as a broken right ankle in February of 2009 . . . caused [Claimant] to place more weight on her left knee" and her "current problems are not related to her 2006 accident with Verizon." Furthermore, Commissioner Wilkerson concluded Commissioner Barden's order of December 3, 2009, entitled Claimant "to causally-related future medical treatment that may tend to lessen her period of disability, as recommended by the authorized treating physician, *specifically restricted* to Darvocet or a comparable medication." (emphasis added).

## II. Appeals

Claimant appealed, and the Appellate Panel affirmed Commissioner Wilkerson's order in its entirety. The Appellate Panel restated the findings of fact and conclusions of law from Commissioner Wilkerson's order, including the specific restriction of Claimant's future medical treatment to "Darvocet or a comparable medication."

Claimant appealed to the circuit court,[3] which, in an order dated July 16, 2012, reversed the decision of the Appellate

---

3. Because Claimant's injury occurred in 2006, her appeal was to the circuit court under former section 42–17–60 of the South Carolina Code (1985). The current version, under which appeals from the Appellate

Panel. After reviewing the evidence in the record, the circuit court concluded the Appellate Panel's findings were affected by errors of law. In particular, the circuit court ruled the record contained "no substantial evidentiary or legal support" for the Appellate Panel's finding that Claimant did not suffer a change of condition. Next, it ruled the Appellate Panel's finding of two intervening causes of Claimant's change of condition was "both an error of law and clearly erroneous in light of the evidence." Finally, the circuit court reversed the Appellate Panel's modification to the provision in the December 3, 2009 order allowing for future medical treatment, specifically stating Claimant

> is entitled to the treatment recommended by the authorized treating physician relative to [her change of] condition, namely a total knee arthroplasty to be performed at a suitable time as determined by [Claimant] and the authorized treatment physician, as well as other medications or treatment as recommended by the authorized treating physician.

This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act ("APA") provides the standard for judicial review of decisions by the Appellate Panel. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010). Under the APA, an appellate court may reverse or modify the decision of the Appellate Panel if the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous ,in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp.2012); *Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010).

The Appellate Panel is the ultimate factfinder in workers' compensation cases. *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). As a general rule, an appellate court must affirm the findings of fact made by the Appellate Panel if they are supported by substantial evidence. *Pierre,*

Panel are to the court of appeals, applies only to injuries sustained on or after July 1, 2007. 2007 Act No. 111, Pt. I, Section 30.

386 S.C. at 540, 689 S.E.2d at 618. "Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Hill v. Eagle Motor Lines,* 373 S.C. 422, 436, 645 S.E.2d 424, 431 (2007). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the [Appellate Panel's] finding from being supported by substantial evidence." *Id.*

## LAW/ANALYSIS

### I. Change of Condition

■ Employer first asserts the circuit court erred in reversing the Appellate Panel's determination Claimant did not suffer a change of condition. We agree.

■ Section 42–17–90(A) of the South Carolina Code (Supp. 2012) permits the review of a previous workers' compensation award "on proof by a preponderance of the evidence that there has been a change of condition caused by the original injury, after the last payment of compensation." A change of condition in a workers' compensation claim is "a change in the claimant's physical condition as a result of the original injury, occurring after the first award." *Causby v. Rock Hill Printing & Finishing Co.,* 249 S.C. 225, 227, 153 S.E.2d 697, 698 (1967).

"In workers' compensation cases, this [c]ourt, as well as the circuit court, serves only to review the factual findings of the Appellate Panel and to determine whether the substantial evidence of record supports those findings." *Mungo v. Rental Unif. Serv. of Florence, Inc.,* 383 S.C. 270, 285, 678 S.E.2d 825, 833 (Ct.App.2009).

Commissioner Barden's decision of December 3, 2009, states she considered not only medical records dated up to and including March 3, 2008, but also the testimony Claimant gave on October 15, 2009, which included statements about her condition on that date. Accordingly, we find Commissioner Barden made Claimant's initial award based upon a determination of Claimant's condition as of October 15, 2009.

We do not view the change of condition issue in this case to be as difficult as the parties view it. Clearly Commissioner

Barden determined Claimant "had preexisting advanced degenerative joint disease." A careful reading of Dr. Grady's testimony reflects there was a "natural progression" of her disease.[4] At one point, he testified that Claimant's condition was "more of a degenerative[,] insidious, slow problem." He opined, "It's my professional medical opinion within a reasonable degree of medical certainty that [Claimant] per my examination, history, physical, etc.[,] had a natural progression of her disease process from the time that I did surgery on her until the time that I saw her on November 4th, 2010." He also stated that while it was possible Claimant's exercising may have accelerated her condition, he believed "we are going to arrive at the same end result whether it would have been six months later, eight months later, or [twelve] months later, as we did when I saw her on November 4." Finally, while Dr. Grady and Claimant disagreed as to her level of pain when he saw her on November 4, 2010, he testified that it remained the same as when he saw her in 2008. Of course, questions of credibility rest within the discretion of the Appellate Panel, not the circuit court or this court.

Accordingly, we hold Dr. Grady's testimony and portions of Claimant's testimony constitute substantial evidence supporting the Appellate Panel's decision that Claimant did not suffer a change of condition. Further, any change in Claimant's condition was the result of the natural progression of her preexisting degenerative joint disease and not the result of her original injury. *See Brown v. R.L. Jordan Oil Co.*, 291 S.C. 272, 275, 353 S.E.2d 280, 282 (1987) ("[A] condition due *solely* to natural progression of a preexisting disease is not compensable.").

## II. Future Medical Treatment

■ Employer asserts the circuit court erred in reversing the Appellate Panel's modification of the language in the December 3, 2009 order concerning the extent of Claimant's future medical benefits. We disagree.

---

4. Claimant may have confused the degeneration of her condition caused by her injury with the degeneration of her condition resulting from the natural progression of her pre-existing degenerative joint disease.

An appellate court may reverse or modify the decision of the Appellate Panel if the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or not supported by substantial evidence in the record. S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp.2012).

In December 2009, after reciting Claimant was taking Darvocet for both her left knee injury and her non-work-related right ankle fracture, Commissioner Barden found Claimant was "entitled to receive *Dodge*[5] medicals that may tend to lessen her period of disability, as recommended by the authorized treating physician, *including* Darvocet or comparable medication." (emphasis added). In April 2011, Commissioner Wilkerson stated Dr. Grady had testified Claimant's treatment had not changed, found "Darvocet or a comparable medication [wa]s the only compensable medication," then concluded:

Under § 42–17–60 and *Dodge v. Bruccoli, Clark, Layman, Inc.,* ... and pursuant to the Order of Commissioner Barden filed December 3, 2009, [C]laimant is entitled to causally-related future medical treatment that may tend to lessen her period of disability, as recommended by the authorized treating physician, *specifically restricted* to Darvocet or a comparable medication.

(emphasis added).

Although the Appellate Panel did not explain why it imposed this restriction on Claimant's future medical care, it echoed Commissioner Wilkerson's decision to replace "including" with "specifically restricted to," adding only that its finding "that Darvocet or a comparable medication is the only compensable medication" "clarifie[d] any earlier decision on that point."

We find the Appellate Panel's order misstates Dr. Grady's opinions and deposition testimony. At his deposition, Dr. Grady testified "within a reasonable degree of medical certainty" that Claimant experienced "a natural progression of her disease process from the time that [he] did surgery on her

---

5. *Dodge v. Bruccoli, Clark, Layman, Inc.,* 334 S.C. 574, 582, 514 S.E.2d 593, 597 (Ct.App.1999) (holding employers are obligated to provide injured workers with medical treatment beyond the date of MMI upon a finding by the Workers' Compensation Commission that the treatment "would tend to lessen the period of disability").

until the time that [he] saw her on November 4th, 2010." He repeatedly opined that from the last time he saw

Claimant in January 2008 to the date of his deposition, the condition of Claimant's knee had materially worsened due to the natural degeneration of her arthritic condition. According to Dr. Grady, Claimant was already eligible for a knee replacement in 2008, but he left the decision to her because he believed a patient knew best whether she needed surgery.

The replacement of "including" with "specifically restricted to" in Commissioner Wilkerson's April 2011 order deprived Claimant of the opportunity to seek any medical treatment besides pain medications for her deteriorating knee condition. This is contrary to the previous decision of Commissioner Barden which was either not appealed or was affirmed by the Appellate Panel.[6] Moreover, the record does not establish Claimant is no longer in need of a total knee arthroplasty or other medications and treatment as recommended by the authorized treating physician. We find the Appellate Panel's restriction affected Claimant's substantial right to receive future medical care and treatment that would tend to lessen the period of her disability. Accordingly, the circuit court did not err in striking the restriction.

## CONCLUSION

We reverse the circuit court's determination that substantial evidence in the record does not support the Appellate Panel's finding that Claimant suffered no change of condition. Furthermore, we find the circuit court did not err in reversing the Appellate Panel's modification of Commissioner Barden's decision governing Claimant's future medical care and treatment in the 2009 award. We conclude Employer's remaining issues on appeal are moot in view of this decision.

**AFFIRMED IN PART AND REVERSED IN PART.**

HUFF and GEATHERS, JJ., concur.

---

6. The record before this court does not include proceedings related to this decision.